THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY LOWTHER, Defendant-Appellant.

Second District    No. 78-553

Opinion filed July 7, 1980.

Mary Robinson, of State Appellate Defender's Office, of Elgin, and Michael Mulder, of State Appellate Defender's Office, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Melbourne A. Noel, Jr., Donald B. Mackay, and Mark L. Rotert, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

On December 18, 1975, the defendant was charged in a five-count indictment with the offenses of forgery, attempt theft and theft. After a jury trial, he was convicted of forgery (Ill. Rev. Stat. 1975, ch. 38, par. 17—3) and two counts of attempt theft (Ill. Rev. Stat. 1975, ch. 38, par 8—4). The trial court entered judgments of conviction on the verdicts and sentenced the defendant on March 31, 1977, to a term of imprisonment from 3 1/3 to 10 years for forgery, one to three years for attempt theft as regards count III and one to three years for attempt theft with respect to count V. These sentences were ordered to be served consecutively. On November 10, 1977, we denied the defendant's motion for a late notice of appeal. The defendant then filed a petition for leave to appeal in the Illinois Supreme Court on January 5, 1978. On March 30, 1978, our supreme court announced that the defendant's petition was allowed and further, in the exercise of the court's supervisory jurisdiction, ordered that the sentence imposed by the trial court be vacated and the cause remanded for resentencing "within the limit prescribed by law (Ill. Rev. Stat. 1975, ch. 38, sec. 1105—8—4(c))." Upon remand, the trial court on July 19, 1978, resentenced the defendant under the applicable sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1 et seq.). The court sentenced the defendant to a term of imprisonment from 3 1/3 to 10 years on the forgery conviction and imposed a sentence of imprisonment from one to three years on the conviction of attempt theft on count III, which sentence was made consecutive to the sentence for forgery. With respect to the other count of attempt theft, the court imposed a term of imprisonment from one to three years to be served concurrently with the other sentences. The defendant appeals. We affirm.

The evidence in this case shows that the forgery count of the indictment involved a $312 check, dated November 10, 1975, which was presented by the defendant on November 12, 1975, to the Downers Grove Currency Exchange for payment to Alpha-Omega Publishers. The defendant, who was sole owner of Alpha-Omega Publishers, received $312 in cash as payment for the check. The check was drawn on the Acorn Hill Farm account, which had its checking account at the Washington

Bank and Trust Company of Naperville, and was purported to be endorsed by Frances Perkins. Although Frances Perkins had previously been a signatory for the Acorn Hill Farm account, she was not authorized to endorse checks on that account after January 1975. Ms. Perkins testified at trial that the signature on the check was not hers and that she had not authorized anyone, including the defendant, to sign the check.

The basis for the attempt theft offenses charged in counts III and V of the indictment is that the defendant attempted by deception to exert control over the funds of Heritage First National Bank of Lockport. Evidence adduced at trial indicates that the defendant opened an account at Heritage First National Bank in November of 1975 in the name of Alpha-Omega Publishers. At this time the defendant deposited a $5,000 check, dated November 10, 1975, and made payable to Alpha-Omega Publishers, which he endorsed in the name of Peter Phillips. This check was drawn on an account in the United Bank of Arizona. The record also reveals that the defendant had personally closed the Arizona account almost a year earlier, when he made out a check payable to Prescott College for the "balance of account." The check drawn on the United Bank of Arizona, which was deposited in Heritage First National Bank and credited to the account of Alpha-Omega Publishers, was later returned unpaid, because the Arizona bank failed to honor it. The defendant then drew two checks on the account of Alpha-Omega Publishers at Heritage First National Bank which were made payable to James Stefanelli in the amounts of $1,500 and $750, dated November 17 and November 21, 1975, respectively. Both checks subsequently failed to clear the bank due to a lack of sufficient funds. The $1,500 check is the subject matter of count III, while the $750 check forms the basis for count V of the indictment.

On appeal, the defendant makes two contentions: (1) that he was entitled to be resentenced on July 19, 1978, under the sentencing provisions of the amendatory Unified Code of Corrections which became effective on February 1, 1978 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1 *et seq.*) rather than under the law in effect on March 30, 1977, the date of his initial sentencing (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1 *et seq.*); and (2) that the trial court improperly imposed consecutive sentences on the forgery and attempt theft convictions.

In support of his first contention that he was entitled to be resentenced under the amendatory Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1 *et seq.*) rather than under the prior law (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1 *et seq.*), the defendant advances three arguments: (1) that the supreme court's mandate of March 30, 1978, directing the trial court to resentence the defendant "within the limit prescribed by law (Ill. Rev. Stat. 1975, ch. 38,

sec. 1105—8—4(c))," did not prohibit the trial court from resentencing him under the new code; (2) that his constitutional rights to due process and equal protection of the law were denied when the trial court refused to allow him to elect to be resentenced under the provisions of the new act; and (3) that section 8—2—4(b) of the amendatory Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b)) did not preclude him from electing to be resentenced under the new code given the particular facts of this case.

Before addressing the merits of the defendant's first argument, we state at the outset that we are satisfied that the supreme court had intended to refer to section 5—8—4(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(c)) when it mistakenly cited to nonexistent "sec. 1105—8—4(c)." The mistaken statutory reference apparently was the result of a typographical error. At the original sentencing hearing on March 30, 1977, the trial court sentenced the defendant to a prison term of 3 1/3 to 10 years for forgery and from one to three years for each of two counts of attempt theft, the sentences to be served consecutively. This sentencing formula violated the statutory rules governing the aggregate maximum and minimum periods of consecutive sentences set forth in section 5—8—4(c) of the Unified Code of Corrections in effect at the time of the original sentencing. We believe the supreme court's mandate specifically directed the trial court to rectify this sentencing error. We also note that the defendant did not argue at the resentencing hearing and does not contend on appeal that the supreme court did not intend to refer to section 5—8—4(c) when it cited to "sec. 1105—8—4(c)."

■■ ■ Having made this initial determination, we now consider the defendant's contention that the trial judge was not obliged to resentence him under the sentencing provisions of the 1975 Unified Code of Corrections. It is a basic rule of law in Illinois that the mandate of a reviewing court gives the trial court jurisdiction to do only that which the mandate requires. (*Thomas v. Durchslag* (1951), 410 Ill. 363, 365; *People v. Dukett* (1975), 33 Ill. App. 3d 863, 865; *People v. Street* (1974), 19 Ill. App. 3d 541; *People v. Bain* (1973), 10 Ill. App. 3d 363,364; *Hamilton v. Faulkner* (1968), 96 Ill. App. 2d 415, 418.) "Where, as here, the directions of a reviewing court are specific, a positive duty devolves upon the court to which the cause is remanded to enter an order or decree in accordance with the directions contained in the mandate. Precise and unambiguous directions in a mandate must be obeyed. [Citations.]" (*Thomas v. Durchslag* (1951), 410 Ill. 363, 365.) We believe that the supreme court's order referred to a particular section and year of the Unified Code of Corrections for a specific reason. Absent a petition for rehearing to bring to the supreme court's attention matter which the defendant believed it

had overlooked or misapprehended in entering its order (Ill. Rev. Stat. 1977, ch. 110A, par. 367), the court's order became final and was binding on the trial court. In resentencing the defendant under the sentencing provisions of the 1975 statute, the trial court complied fully with the directions of the supreme court as it was compelled to do.

In seeking to be allowed to elect sentencing under the provisions of the amendatory Unified Code of Corrections which became effective on February 1, 1978 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1 *et seq.*), the defendant asserts that section 8—2—4(b) of the new code (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b)) is unconstitutional in that it denies him due process and equal protection of law as guaranteed by the fourteenth amendment to the United States Constitution. Section 8—2—4(b) of the new act states:

> "Prosecution for any violation of law occurring before the effective date of this amendatory Act of 1977 [February 1, 1978] is not affected or abated by this amendatory Act of 1977. If the defendant has not been sentenced before the effective date of this amendatory Act of 1977, he shall have the right to elect to be sentenced under the law as it existed at the time of his offense or under the law in effect on and after the effective date of this amendatory Act of 1977. *If a sentence has been imposed before the effective date of this amendatory Act of 1977, the defendant shall not have the right of election even though his case has not been finally adjudicated on appeal*; however, where eligible, he shall have the rights provided by Section 3—3—2.1 of this Code." (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b).)

Reviewing courts of this State have uniformly rejected the constitutional challenges raised by the defendant here. (*E.g., People v. Grant* (1978), 71 Ill. 2d 551, 561-62; *People v. Peoples* (1979), 71 Ill. App. 3d 842, 849; *People v. Perkins* (1979), 67 Ill. App. 3d 911, 913; *People v. Short* (1978), 66 Ill. App. 3d 172, 181.) We adopt the rationale of these cases and adhere to their result. Therefore, we conclude that the defendant's constitutional challenges are without merit.

The defendant also contends that, given the particular facts of this case, section 8—2—4(b) of the amendatory Unified Code of Corrections did not preclude him from exercising the option to elect to be resentenced under the sentencing provisions of the new act (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1 *et seq.*). The essence of the defendant's argument here is that he never received a lawful or valid sentence prior to the effective date of the new sentencing act of 1978 and, consequently, he was legally sentenced for the first time on July 19, 1978, after the effective date of the amendatory sentencing act. Therefore, he maintains he should

have been afforded the opportunity to elect to be resentenced under the sentencing provisions of the new code.

Although the defendant has cited no pertinent case law in support of this contention, our independent research has revealed one case which is relevant here. In *People v. Rea* (1979), 80 Ill. App. 3d 77, the defendant was convicted and sentenced in 1975; his conviction was reversed in 1977 and the cause was remanded for a new trial. He was again convicted, and sentence was imposed after the effective date of amendatory Unified Code of Corrections. He was sentenced under the sentencing provisions of the pre-1978 Code. On appeal, the court held that the defendant was entitled to elect to be sentenced under the amendatory act, because his original sentence in 1975 was rendered a nullity when his conviction was reversed on appeal; consequently, it could not be said that he had been sentenced prior to the February 1, 1978, effective date of the new act. 80 Ill. App. 3d 77, 80.

■■ We are of the opinion that the present case is distinguishable from *People v. Rea* (1979), 80 Ill. App. 3d 77. Unlike the situation in *Rea*, here the defendant's conviction was not reversed on appeal. Furthermore, although the supreme court vacated the sentences imposed by the trial court, we believe the court's order was directed solely to the unlawful aggregate maximum and minimum periods of consecutive sentences which were imposed by the trial court rather than the individual sentences imposed on the forgery and attempt theft convictions. The separate or individual sentences imposed on the forgery conviction and on each of the attempt theft convictions fell within the permissible statutory sentencing limits of section 5—8—1(b), (c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b), (c)). As was pointed out above, the supreme court's order referred solely to section 5—8—4(c) of the Unified Code of Corrections, the provision which 'specifies the maximum and minimum periods of consecutive sentences which the court may impose. Thus, in contradistinction to *Rea*, here the individual or underlying sentences themselves were not rendered nullities by the supreme court's order. We believe that this analysis comports best with the substance of the supreme court's order and is the most logical interpretation of the reasoning underlying the order.

The second issue raised by the defendant is that the trial court improperly imposed consecutive sentences on the forgery conviction and the attempt theft conviction of count III in light of the statutory language of section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)) proscribing consecutive sentences "for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."

In determining whether consecutive sentences may be imposed under section 5—8—4(a), courts consider and evaluate the totality of the facts and circumstances to ascertain whether the defendant's actions resulting in two or more offenses were part of a single course of conduct without any change in the criminal purpose or objective or new elements of proof required. (*People v. Perry* (1976), 38 Ill. App. 3d 81, 86; *People v. Siglar* (1974), 18 Ill. App. 3d 381, 383.) The facts before us indicate that the forgery offense involved a $312 check made payable to Alpha-Omega Publishers of which the defendant was sole owner; it was drawn on the Acorn Hill Farm account and presented for payment by the defendant on November 12, 1975, at the Downers Grove Currency Exchange. This count related to a forged instrument which purportedly was endorsed by Frances Perkins and necessitated, as an essential element of proof of the crime, a demonstration that Ms. Perkins had not signed the check and had not given the defendant the authority to do so. (Ill. Rev. Stat. 1975, ch. 38, par. 17—3.) The statute also requires that the person committing the crime possess the specific intent to defraud. By contrast, the check which formed the basis for the attempt theft charge of count III was dated November 17, 1975, and was made payable by the defendant to James Stefanelli in the amount of $1,500. It was drawn on the account of Alpha-Omega Publishers at the Heritage First National Bank of Lockport. The offense of attempt theft requires, as an essential element of proof of the crime, that the defendant intended to exert unauthorized control over the property of the owner, here Heritage National Bank, and took a substantial step toward the commission of the theft. Ill. Rev. Stat. 1975, ch. 38, pars. 8—4(a), 16—1(a).

Here the forgery and attempt theft offenses, which together formed the basis for the defendant's consecutive sentences, were separate and distinct acts requiring different elements of proof and cannot be said to have arisen from a single course of conduct. The victim in the former was different than the victim in the latter, and the proof required to sustain the one was different from that required to sustain the other. In addition, the crimes occurred at disparate places and times and involved different or separate negotiable instruments.

Likewise, the two crimes in question were independently motivated such that there was a substantial change in the defendant's criminal objective, purpose or motivation. In particular, the mental state and objective of the defendant were different with respect to each distinct crime or act. As regards the forgery offense, the defendant intended to defraud either the Downers Grove Currency Exchange or the Acorn Hill Farm, whereas the defendant's purpose with respect to the attempt theft count was to exert unauthorized control over the property of Heritage First National Bank. Moreover, we reject the defendant's contention that

consecutive sentences could not be imposed here because his crimes were allegedly motivated essentially by the common objective of raising funds for Alpha-Omega Publishers. To accept the defendant's reasoning in this regard would lead to the illogical, untenable and absurd result that a defendant could commit a number of separate crimes and still escape consecutive sentences as long as he asserted they were committed as part of or in furtherance of a common scheme or criminal objective. The court in *People v. Willingham* (1976), 38 Ill. App. 3d 612, 615, rejected a contention similar to that advanced by the defendant here. It is our opinion that the facts of the present case are even more compelling than those of *Willingham.*

■■ In sum, we determine that there was a substantial change in the nature of the defendant's criminal objective and that the separate offenses constituted a departure from a single course of conduct. Therefore, section 5—8—4(a) is inapplicable to this case, and the consecutive sentences were proper.

■■ Finally, the defendant contends here that the State conceded that the crimes in question were part of a single course of conduct and, consequently, he should prevail. While arguing in opposition to a defense motion for severance of the multiple counts of the indictment pursuant to section 111—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—4), the State maintained that the defendant's actions were part of a comprehensive or single transaction. Given the context in which the State's remarks were made, it is clear that the State was not addressing itself to the question whether consecutive sentences were permissible under section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)). The court in *People v. Edwards* (1977), 47 Ill. App. 3d 780, 782-83, considered and rejected a contention similar to that raised by the defendant here. In like manner, we reject as without merit the defendant's assertion that the State conceded the instant offenses were part of a single course of conduct. However, even if the State had agreed that the consecutive sentences were improperly imposed on the defendant because the forgery and attempt theft offenses arose out of a single course of conduct, we would not be bound by the State's concession. See *People v. Craig* (1977), 47 Ill. App. 3d 242, 255-56; *cf. People v. Hopkins* (1973), 53 Ill. 2d 452, 460.

For the foregoing reasons, the judgment of the trial court of the Eighteenth Judicial Circuit, Du Page County, is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.