THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOSEPH PERRUQUET, Defendant-Appellant.

Fifth District   No. 82—16

Opinion filed September 14, 1983.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Randy Patchett, State's Attorney, of Marion (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

The defendant, Joseph Perruquet, was charged by information in Williamson County with the offenses of rape and deviate sexual assault and by information in Jackson County with the offenses of rape and aggravated kidnaping. All offenses were allegedly committed on the same day and involved the same victim. The Jackson County charges were subsequently consolidated with those in Williamson County, and the defendant was found guilty of all four offenses in a jury trial conducted in Williamson County. In sentencing the defendant, the trial court ordered that the sentence for the Jackson County rape be served consecutively to the sentences imposed on the other three charges, which were to be served concurrently. On appeal the defendant contends (1) that the court erred in imposing consecutive sentences because the offenses of which he was convicted were part of a single course of conduct during which there was no substantial change in the nature of his criminal objective; (2) that the court erred in imposing an extended term for the less serious offense of aggravated kidnaping; and (3) that the sentences totalling 120 years for the four offenses were excessive and should be reduced. We affirm.

On August 28, 1980, the defendant, while armed with a knife, abducted the victim from the parking lot at the University Mall in Carbondale, Illinois. He drove her east on Route 13 stopping once to tape her hands behind her back, to a place on Cambria Road in Williamson County. The defendant then removed the victim's clothes and forced her to submit to acts of fellatio and sexual intercourse. Following this the defendant directed the victim to dress and get into the car. The defendant entered the car himself and went through the victim's purse, taking all her money.

The defendant drove back toward Carbondale and told the victim he was "going to let [her] out someplace and take [her] car back to the mall." When they got to the mall, however, the defendant drove past the mall, through Carbondale, and into the country. When the

victim asked the defendant where he was taking her, he said, "I just want to drive awhile." The victim asked the defendant, "You're not going to hurt me again, are you?" and he replied, "I was thinking about it."

The defendant subsequently pulled into a cornfield where he again removed the victim's clothes and raped her. He then drove her back to the mall and left her in the car.

Following the victim's testimony to this effect at trial, the jury found the defendant guilty of aggravated kidnaping, deviate sexual assault, and two counts of rape. The court sentenced the defendant to an extended term of 30 years for aggravated kidnaping to run concurrently with extended terms of 60 years each for the Williamson County offenses of rape and deviate sexual assault. In addition, the defendant was sentenced to an extended term of 60 years for the Jackson County rape which was to run consecutively to the Williamson County offenses.

■ On appeal from these sentences, the defendant contends that it was improper to impose a consecutive sentence for the Jackson County rape because it was part of the same course of conduct as the other offenses and was motivated by the same criminal objective. He asserts that the aggravated kidnaping of the victim constituted a single continuous transaction that involved the commission of other acts including the two rapes. Since the second rape in Jackson County was motivated by the same objective of sexual assault as the previous offenses in Williamson County, it is the defendant's position that a consecutive sentence for this offense was precluded by section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(a)), governing consecutive terms of imprisonment.

Section 5—8—4(a) states in pertinent part:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(a).)

Conduct, as defined in the Criminal Code of 1961 refers to an act or series of acts and the accompanying mental state. (Ill. Rev. Stat. 1981, ch. 38, par. 2—4.) Under this provision, then, the imposition of consecutive sentences depends upon both the existence of separate and distinct acts and separate motivation behind those acts. See *People v. Rose* (1979), 75 Ill. App. 3d 45, 393 N.E.2d 698; see also Note, *Criminal Law: Concurrent & Consecutive Sentencing*, 1973 U. Ill. L. F. 423.

Courts have applied this test to uphold consecutive sentences where the defendant committed different crimes sequentially against the same victim. (*Cf. People v. Brown* (1975), 31 Ill. App. 3d 547, 334 N.E.2d 323 (defendant's criminal objective changed from rape to armed robbery when he took money from the victim's purse after completing the rape); *People v. Walker* (1971), 2 Ill. App. 3d 1026, 279 N.E.2d 23 (defendant's conduct of raping victim, slitting her throat and abdomen, and then taking her money and jewelry constituted three separate acts involving three distinct mental states).) In such instances the defendant's acts, though closely related, were sufficiently separate and distinct to justify the imposition of multiple punishments.

Similarly, in the case at bar, the evidence showed that the defendant, after completing the first rape against the victim, had her dress and get into the car after which he proceeded to go through her purse and take her money. While the defendant here was not charged with nor convicted of armed robbery as was the defendant in *People v. Walker*, the victim's testimony concerning this incident provided evidence of a change in the nature of the defendant's criminal objective that the court could consider in imposing sentence. Further evidence that the defendant's objective had changed after the first assault was provided by the defendant's announced intent to let the victim out of the car and take the car back to the mall. This statement by the defendant indicated that the first incident was completed and that he did not intend at that time to commit an additional rape of the victim. (*Cf. People v. Finch* (1980), 86 Ill. App. 3d 493, 408 N.E.2d 87 (defendant's statement that he "didn't have any intention of killing those two boys" when he went back to the service station to commit robbery supported consecutive sentences for armed robbery and murder); *People v. Lott* (1978), 57 Ill. App. 3d 706, 373 N.E.2d 466 (consecutive sentences were proper where defendant admitted he did not form the intent to kill the driver of the vehicle involved until after he killed the passenger).) From this evidence the court in the instant case was justified in finding that the second rape in Jackson County was motivated by a separate criminal objective formed sometime after the defendant had completed the first rape of the victim.

The defendant contends, however, that even if he had temporarily abandoned his criminal intent following his acts in Williamson County, this was not a change in "the nature of the criminal objective" contemplated by section 5—8—4(a), as there was at most a change from a criminal to a noncriminal objective and the nature of the criminal objective involved in the two rapes was the same. He asserts, therefore,

that when he again manifested a criminal intent in approaching the cornfield in Jackson County where the second rape took place, this intent must be considered, for purposes of the statute, as the same criminal objective he had displayed earlier in the abduction.

We find no merit in this argument because it not only discounts the defendant's change in criminal intent from rape to armed robbery previously noted but also derives from too narrow a reading of the statute. While we are aware of no other case in which consecutive sentences were imposed for the commission of repeated offenses of the same type on the same victim, we do not believe such sentences are precluded by section 5—8—4(a) when the evidence shows the existence of separate acts and a change in the defendant's accompanying mental state. To hold that, under these circumstances, consecutive sentences are precluded would be contrary to the deterrent purpose of multiple sentencing which is to discourage the commission of further offenses once an initial offense has been completed. See Note, *Criminal Law: Concurrent & Consecutive Sentencing*, 1973 U. Ill. L. F. 423.

The evidence in the case at bar established that the defendant committed two acts of rape against the victim that were separate in time and location. While the second rape involved a renewed criminal objective of sexual assault, the second rape was no more a part of the first rape than would be a robbery (*People v. Brown; People v. Rose*) or an attempted murder (*People v. Walker*) committed against the same victim following a rape. Here, unlike *People v. Morgan* (1976), 44 Ill. App. 3d 459, 358 N.E.2d 280, cited by the defendant, there was sufficient evidence of a change in the defendant's criminal objective following the first rape of the victim. We find, therefore, that the trial court was warranted, upon considering the totality of facts and circumstances involved (see *People v. Lowther* (1980), 85 Ill. App. 3d 735, 407 N.E.2d 1038), in imposing consecutive sentences for the separate offenses committed by the defendant.

■ We note additionally that while the defendant correctly asserts that the sentence for the second rape could not be imposed to run consecutively to the sentence for aggravated kidnaping (*People v. Brown*), such a sentence was not imposed in the instant case. Rather, the sentence for the second rape was imposed to run consecutively to the sentences for the two Williamson County sex offenses, while the sentence for aggravated kidnaping was to run concurrently with these latter sentences. Here, as in *People v. Brown*, the continuous nature of the aggravated kidnaping offense did not preclude the imposition of consecutive sentences for separate offenses committed during the

course of the kidnaping, and the court properly sentenced the defendant to consecutive terms for these offenses.

■■ ■ The defendant next contends that the trial court erred in imposing an extended-term sentence for aggravated kidnaping where this offense was not the most serious of which he was convicted. In support of his argument the defendant cites appellate court decisions limiting the imposition of extended-term sentences to the most serious offense or offenses of which a defendant was convicted. (See, *e.g., People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327; *People v. Freeman* (1982), 104 Ill. App. 3d 980, 433 N.E.2d 974.) Other courts have held that this interpretation of the extended-term sentencing statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)) is erroneous and results from too broad a reading of the supreme court's related opinion in *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520. (*People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 439 N.E.2d 1311; see *People v. Mims* (1982), 111 Ill. App. 3d 814, 444 N.E.2d 684; *People v. Jordan* (1983), 114 Ill. App. 3d 16, 448 N.E.2d 237; *People v. Way* (1983), 115 Ill. App. 3d 198, 450 N.E.2d 43.) While there continues to be a conflict in the appellate court decisions on this issue (see *People v. Rowe* (1983), 115 Ill. App. 3d 322, 450 N.E.2d 804), we find the reasoning of the *Mims, Jordan* and *Way* courts to be persuasive, and we accordingly adopt this view in the instant case.

The statute here at issue governing extended-term sentencing states in pertinent part:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a).)

The court in the instant case imposed extended-term sentences for the offenses of deviate sexual assault and two counts of rape, all Class X felonies, and for aggravated kidnaping, a Class 1 felony. (See Ill. Rev. Stat. 1981, ch. 38, pars. 11—1(c), 11—3(b).) The extended-term sentences were based upon a prior rape conviction of the defendant's under section 5—5—3.2(b)(1), which provides for an extended-term sentence "[w]hen a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years ***." Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).

The decisions relied upon by the defendant in urging the reduction of his aggravated kidnaping sentence have interpreted the lan-

guage of section 5—8—2(a) as authorizing extended-term sentences only "for the class of the most serious offense" of which an offender stands convicted. (See *People v. Rowe.*) We, however, do not read the statute as limiting the imposition of extended-term sentences to a defendant's most serious offenses but rather as limiting the maximum sentence a defendant may receive when no aggravating factor is present. (See *People v. Way; People v. Jordan.*) Like the court in *People v. DeSimone*, we find nothing in the statute nor in the supreme court's holding in *People v. Evans* to indicate that an extended-term sentence may not be imposed for a lesser offense so long as both it and the more serious offenses are accompanied by an appropriate aggravating factor. Further, as the *Mims* court noted, the supreme court's subsequent analysis of the sentencing issue in *People v. Williams* (Docket No. 51870, April 16, 1983) leads to the "clear implication *** that extended-term sentences may be imposed in appropriate circumstances, *for different classes of offenses*, even in those situations where the offenses are not the most serious for which an offender is convicted." (111 Ill. App. 3d 814, 821-22, 444 N.E.2d 684, 689.) We hold, therefore, under the reasoning of these cases that the defendant's extended-term sentence for aggravated kidnaping was proper and should not be reduced.

The defendant contends finally that his sentences totalling 120 years for the offenses of deviate sexual assault, two rapes and aggravated kidnaping were excessive and should be reduced as constituting an abuse of discretion. It is well settled that a trial judge is accorded wide latitude in sentencing, and his sentencing decision is "entitled to great deference and weight" on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) In sentencing the defendant for the instant offenses, the trial judge properly considered the nature and circumstances of these offenses as well as the defendant's extensive criminal history both as a juvenile and as an adult, which included a similar abduction and rape in Carbondale approximately two months earlier. In light of the defendant's record and the need for deterrence and protection of the public, we cannot say the sentence imposed by the trial court constituted an abuse of discretion. See *People v. Perruquet.*

For the reasons stated herein, we accordingly affirm the judgment of the circuit court of Williamson County.

Affirmed.

KASSERMAN and KARNS, JJ., concur.