2024 IL App (1st) 221684-U

No. 1-22-1684

Order filed August 14, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 7693 |
| | ) | |
| CHRISTIAN MONROY-MARTINEZ, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE VAN TINE delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   *Held*: We vacate defendant's conviction and sentence for aggravated kidnapping as charged in count I because that count was nol-prossed and not reinstated. We remand for resentencing on aggravated kidnapping as charged in count II with directions to impose a sentence in compliance with the statutory maximum for aggregate consecutive sentences because defendant's offenses all occurred within a single course of conduct. We affirm defendant's sentences for aggravated criminal sexual assault.

¶ 2   Following a bench trial, defendant Christian Monroy-Martinez was found guilty of two counts of aggravated kidnapping and 12 counts of aggravated criminal sexual assault (ACSA).

After merging the counts, the trial court sentenced defendant to 25 years in prison on one count of aggravated kidnapping and 16 years each on six counts of ACSA for a total of 121 years in prison. On appeal, defendant argues that the trial court erred by (1) finding him guilty of and sentencing him on an aggravated kidnapping count the State nol-prossed, (2) imposing a total sentence that exceeds the maximum allowable because his acts constituted a single course of conduct, and (3) imposing an excessive and disproportionate sentence.[1] We affirm in part, vacate in part, and remand with instructions.

¶ 3                                 I. BACKGROUND

¶ 4     Because this appeal involves only sentencing issues, we set out only the facts germane to our analysis and necessary to understand the background of this case.

¶ 5                            A. Charging and Jury Trial

¶ 6     Defendant was initially charged with 62 counts of aggravated kidnapping, ACSA, armed robbery, aggravated battery, and aggravated unlawful restraint premised on his violent sexual assault of C.E. on May 27, 2016.[2] Relevant here, count I alleged that defendant committed aggravated kidnapping when he "knowingly and secretly confined C.E. against her will" and sexually assaulted her (720 ILCS 5/10-2(a)(3) (West 2016)). Count II alleged that defendant committed aggravated kidnapping when he "knowingly by force or threat of imminent force carried C.E. from one place to another with intent to secretly confine C.E.," and sexually assaulted her (*id.*). The State nol-prossed count I prior to defendant's first trial.

---

[1]As we will explain below, "nol-prossed" essentially means the same thing as "dismissed."

[2]C.E. is an adult, but we use her initials to protect her privacy because she is a victim of sexual assault. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 1 n. 1.

¶ 7    Eight counts of ACSA were premised on commission of criminal sexual assault and causing bodily harm (*id.* § 11-1.30(a)(2)). Another eight counts of ACSA were premised on commission of criminal sexual assault while armed with a firearm (*id.* § 11-1.30(a)(8)).

¶ 8    Defendant was tried before a jury and was found guilty. Following a hearing regarding trial counsel's effectiveness pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), the court granted defendant's motion for a new trial.

¶ 9                                B. Bench Trial

¶ 10    The second trial was a bench trial. The State proceeded on aggravated kidnapping counts I and II, 12 counts of ACSA, and one count of armed robbery. The State amended the ACSA counts to remove allegations that defendant was armed with a firearm in violation of section 11-1.30(a)(8) and replaced them with allegations that defendant "displayed, threatened to use, or used a dangerous weapon, other than a firearm, to wit: bludgeon," in violation of section 11-1.30(a)(1) (*id.* § 11-1.30(a)(1)). The ACSA counts alleged defendant committed the following acts of sexual penetration: contact between (1) his penis and C.E.'s anus (counts X and L); (2) his penis and C.E.'s vagina (counts XI and LI); (3) his penis and C.E.'s vagina, "an act separate [f]rom the acts set forth in the other counts" (counts XII and LII); (4) his penis and C.E.'s mouth (counts XIV and LIV); (5) his penis and C.E.'s mouth, "an act separate from the acts set forth in the other counts" (counts XV and LV); and (6) his mouth and C.E.'s vagina (counts XVII and LVII).

¶ 11    The State's evidence established that C.E. was waiting at a bus stop at the intersection of West Fullerton Avenue and North Lavergne Avenue at approximately 8 p.m. on May 27, 2016. Defendant, while driving a vehicle, approached the bus stop, exited his vehicle, and approached

C.E. on foot. He grabbed the back of C.E.'s hair, forced her into the passenger seat of his vehicle, and said, "[D]o what I t[ell] you to do and nothing is going to happen."

¶ 12     Defendant began driving and forced C.E. to perform oral sex on him. Defendant stopped his vehicle in an alley and removed C.E.'s clothes while C.E. begged him to release her. Defendant refused and put his tongue on C.E.'s vagina. Another vehicle approached and C.E. screamed for help. Defendant began driving and forced C.E. to perform oral sex on him again. Defendant stopped his vehicle and inserted his penis in C.E.'s vagina. C.E. attempted to move to the rear of the vehicle but defendant inserted his penis in her anus. C.E. turned over because she was in pain and defendant inserted his penis in her vagina again. C.E. said she could not breathe, so defendant lowered one of the vehicle's windows. C.E. heard voices and screamed for help. Defendant began driving again and struck the left side of C.E.'s face against the glove compartment. He then forced C.E.'s mouth onto his penis, stopped in an alley, and inserted his penis in C.E.'s vagina.

¶ 13     During this incident, defendant had an object that appeared to C.E. to be a firearm. He pressed this object against C.E.'s temple and ran it down to her chin while asking if she knew "how many women survived sexual assaults." While defendant was driving, he stored his weapon beneath his legs and asked C.E., "do you want me to take it out?" C.E. told defendant that she had a young daughter who would be left alone if defendant killed her. Defendant opened the passenger door of his vehicle, pushed C.E. out, threw her clothing at her, and drove away. C.E. encountered two men nearby who summoned police.

¶ 14     C.E. received medical treatment for injuries she sustained during this incident. Defendant's DNA was present on vaginal swabs from a sexual assault kit administered to C.E. C.E. identified defendant to police in a photo array in April 2017, approximately 11 months after the incident.

¶ 15    Defendant testified that he and C.E. had consensual vaginal sex in his vehicle on May 27, 2016. He denied having a weapon, striking C.E. in the face, and having nonconsensual sex with her. He also denied having oral or anal sex with C.E. Police arrested defendant in April 2017. He told detectives he had not had sex with anyone but his wife and that he had never seen C.E.

¶ 16    The court found defendant guilty of both counts of aggravated kidnapping and all 12 counts of ACSA. The court acquitted defendant of armed robbery.

¶ 17                                  C. Sentencing

¶ 18    At the sentencing hearing, the trial court merged aggravated kidnapping count II into aggravated kidnapping count I. The court also merged the 12 ACSA counts into 6 convictions of ACSA premised on defendant's commission of criminal sexual assault while armed with a dangerous weapon other than a firearm.

¶ 19    The presentence investigation (PSI) reflected that defendant was convicted of aggravated driving under the influence in 2012 and had a pending domestic battery case at the time of trial in this case. The State reported that defendant received supervision in the domestic battery case; the victim in that case was his wife. Defendant attended three years of high school but dropped out to work full-time. He was last employed as a shipping and receiving laborer for a food company. Defendant stated that he had a good relationship with his wife, who visited him often in jail and was supportive.

¶ 20    In aggravation, the State presented C.E.'s victim statement. C.E. stated that she felt "weak and fearful," was "not the same woman [she] used to be," and could not "overcome all these things yet that cloud [her] life and tarnish [her] family's life." There was "not a single day" that she went to bed without thinking about this incident. C.E. stated that defendant's imprisonment would not

"make [her] happy even a little" because it would not "undo what [he] did to [her]." Her "greatest hope" was that there would "be no more victims for this man."

¶ 21    In mitigation, defendant stated that he supported three children before he was arrested, worked for the same company for seven years, had a good relationship with his daughters, and had the support of his family. Defendant argued that his criminal history was "minimal."

¶ 22    In allocution, defendant stated that he would have been able to gather evidence to demonstrate his innocence if he had been arrested immediately after this incident rather than approximately a year later.

¶ 23    The State argued that the ACSA counts had a sentencing range 6 to 30 years each as Class X felonies plus a 10-year enhancement due to defendant's use of a weapon during his sexual assault of C.E. The State also maintained that the ACSA sentences had to run consecutively to each other and to the aggravated kidnapping sentence, which had a sentencing range of 6 to 30 years as a Class X felony. According to the State, the minimum total sentence was 102 years: 16 years on each of the six ACSA counts—96 years—plus 6 years on the aggravated kidnapping count. The State maintained that the maximum total sentence was "the sum of the extended term sentence for the two most serious felonies so that would be 60 and 60 which is 120 [years]."

¶ 24    Defendant did not contest the State's calculation of the sentencing range. He only asked that the court consider the ACSA counts premised on penis-to-mouth penetration to be one act.

¶ 25    The trial court indicated that it agreed with the State's calculation of the minimum and maximum sentences. However, the court sentenced defendant to 25 years for aggravated kidnapping and 16 years on each of the six ACSA counts, all sentences to be served consecutively for a total of 121 years in prison. The court acknowledged that defendant was a "productive

working member of society" and that his minimal criminal background had "no connection to what occurred in this case." However, the court explained that defendant's violent sexual assault of C.E. was "despicable" and that she suffered a "nightmar[ish]" and "disgusting evening of horror and terror."

¶ 26    Defendant filed a motion to reconsider sentence, arguing that his 121-year sentence was excessive because the trial court did not consider mitigating factors or defendant's rehabilitative potential. The court denied defendant's motion.

¶ 27    Defendant timely appealed.

¶ 28                                II. ANALYSIS

¶ 29    On appeal, defendant contends that the trial court erred by (1) finding him guilty of and sentencing him on aggravated kidnapping count as charged in count I, which the State nol-prossed and did not reinstate, (2) imposing a total sentence in excess of the sum of the maximum sentences for the two most serious felonies of which he was convicted, and (3) imposing an excessive and disproportionate 121-year "*de facto* life sentence."

¶ 30                    A. Nol-Prossed Aggravated Kidnapping Count

¶ 31    We first address an issue on which the parties agree, which is that the trial court erroneously found defendant guilty of and sentenced him on aggravated kidnapping as charged in count I. Defendant forfeited this issue because he did not object during the sentencing hearing or raise this issue in his motion to reconsider sentence. See *People v. Richards*, 2021 IL App (1st) 192154, ¶ 11. However, he seeks plain error review. The plain-error doctrine is a narrow and limited exception to the general rule of forfeiture. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). To establish plain error in the sentencing context, a defendant must show that clear or obvious error occurred and

either (1) "the evidence at the sentencing hearing was closely balanced," or (2) "the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). We grant review for second-prong plain error, which applies when the trial court has convicted the defendant of an uncharged offense. See *People v. Clark*, 2014 IL App (1st) 123494, ¶ 41. The State agrees that defendant's conviction for a nol-prossed count triggers second-prong plain error review.

¶ 32    The State nol-prossed count I prior to defendant's first trial. "A *nolle prosequi* is the formal entry of record of a prosecuting attorney of his or her unwillingness to prosecute a case." *People v. Artis*, 232 Ill. 2d 156, 169 (2009). To put it simply, a *nolle prosequi* is a dismissal. *People v. Gill*, 379 Ill. App. 3d 1000, 1003 (2008). To reinstate a nol-prossed count, the State must either file a new case or move to vacate the *nolle prosequi* and reinstate the original count. *People v. Hughes*, 2012 IL 112817, ¶¶ 24-25. In this case, the State did neither. Therefore, once the State nol-prossed count I, that count was no longer pending in the trial court. See *People v. Williams*, 2016 IL App (1st) 133812, ¶ 30. The State should not have been allowed to proceed on count I at defendant's second trial and the court should not have found defendant guilty of or sentenced him on that count. See *People v. Stafford*, 325 Ill. App. 3d 1069, 1073-74 (2001). Accordingly, we vacate defendant's conviction and sentence as to count I. See *Williams*, 2016 IL App (1st) 133812, ¶ 30.

¶ 33    That leaves aggravated kidnapping as charged in count II. The trial court found defendant guilty of that count but merged it into count I before entering a 25-year sentence for aggravated kidnapping on count I. Defendant argues that we should remand for sentencing on count II. The State contends that we should simply correct the mittimus to reflect a conviction on count II and

leave defendant's 25-year sentence for aggravated kidnapping unchanged. We agree with defendant. Remand for sentencing on count II is necessary because, as we will explain below, the trial court must fashion a total sentence that does not exceed 120 years. See *People v. O'Neal*, 281 Ill. App. 3d 602, 615-16 (1996) (reversed in part on other grounds by *People v. Garcia*, 179 Ill. 2d 55 (1997)). In addition, the two aggravated kidnapping counts charged different theories of culpability. Count I was premised on knowingly and secretly confining C.E. against her will. Count II was premised on carrying C.E. from one place to another with intent to secretly confine her against her will. We do not know whether the trial court would consider one theory of aggravated kidnapping to warrant a greater, lesser, or the same sentence as the other. Accordingly, we vacate defendant's conviction and sentence with respect to count I and remand for entry of a conviction and sentencing on count II.

¶ 34          B. Maximum Total Sentence Under Section 5-8-4(f)(2)

¶ 35    Defendant also contends that his total sentence of 121 years violates section 5-8-4(f)(2) of the Unified Code of Corrections (730 ILCS 5/5-8-4(f)(2) (West 2016)). Specifically, defendant argues that his actions constituted a single course of conduct, so his total sentence cannot exceed the sum of the maximum sentences for the two most serious felonies of which he was convicted. Defendant also forfeited this argument because he did not object at the sentencing hearing or raise this issue in his motion to reconsider sentence. See *Richards*, 2021 IL App (1st) 192154, ¶ 11. Nevertheless, defendant requests that we review this issue for second-prong plain error as well.

¶ 36          1. Applicability of Section 5-8-4(f)(2)

¶ 37    Defendant was sentenced on one count of aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2016)) and six counts of ACSA (*id.* § 11-1.30(a)(1)). All these convictions are Class X

felonies, and each has a sentencing range of 6 to 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2016). A sentence for ACSA carries a mandatory 10-year enhancement where a defendant displays, threatens to use, or uses a dangerous weapon other than a firearm.[3] 720 ILCS 5/11-1.30(d)(1) (West 2016). Therefore, the trial court sentenced defendant to 16 years on each of the six counts of ACSA. The court also sentenced defendant to 25 years for aggravated kidnapping, all seven sentences to run consecutively to each other. Defendant's ACSA convictions required consecutive sentencing. See 730 ILCS 5/5-8-4(d)(2) (West 2016); *People v. Hatter*, 2021 IL 125981, ¶ 31. Moreover, defendant had to serve the consecutive sentences for ACSA prior to and independent of—in other words, consecutively to—the sentence for aggravated kidnapping. See *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 93. The trial court did not err by imposing seven consecutive sentences and defendant does not suggest otherwise.

¶ 38    However, defendant contends that all his offenses occurred during the same course of conduct. Section 5-8-4(f)(2) provides that:

> "the aggregate of consecutive sentences for offenses that were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective shall not exceed the sum of the maximum terms authorized under Article 4.5 of Chapter V for the 2 most serious felonies involved, but no such limitation shall apply for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5-8-4(f)(2) (West 2016).

---

[3]Although C.E. testified that defendant's weapon appeared to be a firearm, she also testified that he used the weapon like a blunt instrument, *i.e.*, he pushed the weapon against her face and did not discharge a bullet.

That is, when multiple convictions are based on a single course of conduct with no substantial change in criminal objective, the maximum total sentence cannot exceed the sum of the maximum sentences for the two most serious felonies. *Hatter*, 2021 IL 125981, ¶ 31. The purpose of section 5-8-4(f)(2) is to limit the total length of consecutive sentences, as "stacking of penalties can result in sentences of extraordinary harshness." *People v. Tucker*, 167 Ill. 2d 431, 436 (1995).

¶ 39    Whether a defendant's actions constituted a single course of conduct for purposes of section 5-8-4(f)(2) is a question of fact for the trial court and we will uphold the trial court's finding unless it is against the manifest weight of the evidence. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 102. A factual finding is against the manifest weight of the evidence "only if the opposite conclusion is clearly evident or if the finding itself is arbitrary, unreasonable, and not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). In this case, the trial court did not make an express finding as to whether defendant's actions constituted a single course of conduct for purposes of section 5-8-4(f)(2) because defendant did not raise that issue. However, on appeal, the parties do not dispute the facts underlying the offenses, so we can address this issue. See *People v. Thompson*, 2022 IL App (2d) 190950-U, ¶ 41.[4]

¶ 40    "A 'course of conduct' is not necessarily confined to a single incident but may encompass a range of activity," and "[t]he term 'objective' means 'something toward which effort is directed.' " *People v. Daniel*, 311 Ill. App. 3d 276, 287 (2000). This inquiry turns on whether the defendant's acts were "independently motivated." (Internal quotation marks omitted.) *People v. Wilder*, 325 Ill. App. 3d 987, 1001 (2001).

---

[4]Nonprecedential Rule 23 orders issued on or after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023).

¶ 41    The evidence supported a conclusion that defendant had one criminal objective: sexually assaulting C.E. in his vehicle. Although defendant committed multiple acts of penetration, Illinois "courts have held that separate acts of penetration during a single sexual assault are part of a single course of conduct." See *People v. Guzman*, 276 Ill. App. 3d 750, 760 (1995). No evidence showed that defendant had any other, independent criminal objective aside from sexually assaulting C.E. Therefore, defendant's actions were part of a single course of conduct. A finding that defendant's actions were *not* part of a single course of conduct would be against the manifest weight of the evidence. Section 5-8-4(f)(2) applies.

¶ 42    The State argues that section 5-8-4(f)(2) does not apply because defendant committed multiple distinct acts of sexual penetration. This argument conflates the concept of a single course of conduct for purposes of sentencing under section 5-8-4(f)(2) with the one-act, one-crime analysis for purposes of merger. These two analyses are different. *Daniel*, 311 Ill. App. 3d at 287. The one-act, one-crime analysis governs whether multiple convictions merge because they are based on the same *physical* act. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 12. By contrast, section 5-8-4(f)(2) focuses on the defendant's criminal *intent*. *Wilder*, 325 Ill. App. 3d at 1001.

¶ 43    The State also argues that defendant's acts constituted separate courses of conduct because he sexually assaulted C.E. at several different locations in his vehicle. It is true that defendant moved his vehicle during this incident, but there was no evidence that defendant "intended anything but a forcible sexual assault" of C.E at the various locations. See *Guzman*, 276 Ill. App. 3d at 760. On the contrary, the evidence supported an inference that defendant moved his vehicle when C.E. screamed for help, *i.e.*, he drove off to avoid being caught so he could continue sexually

assaulting C.E. In fact, C.E. testified that defendant sexually assaulted her *while* he drove between locations.

¶ 44    The State cites *People v. Perruquet*, 118 Ill. App. 3d 293 (1983), in which the defendant forced the victim into his vehicle at knifepoint and then sexually assaulted her. The defendant took money from the victim's purse, drove to a different county, and told her he was going to release her. However, the defendant then sexually assaulted the victim a second time. This court found that there was a substantial change in the defendant's criminal intent from sexual assault to armed robbery and then back to sexual assault, which represented a "renewed criminal objective." *Id.* at 297. By contrast, in this case, defendant did not express any intent to release C.E. and he did not commit any other crimes that "interrupted" his sexual assault of C.E. in his vehicle. To the extent defendant may have intended to commit armed robbery—a charge of which he was acquitted— that occurred after he pushed C.E. out of his vehicle and drove off with some of her belongings still inside the vehicle. *Perruquet* is distinguishable and does not compel reversal. Accordingly, because there was no substantial change in defendant's criminal objective throughout this incident, the maximum total sentence limitation of section 5-8-4(f)(2) applies.

¶ 45                                    2. Maximum Total Sentence

¶ 46    The question now becomes whether defendant's 121-year total sentence "exceed[s] the sum of the maximum terms authorized under Article 4.5 of Chapter V for the 2 most serious felonies involved." See 730 ILCS 5/5-8-4(f)(2) (West 2016). The "most serious felonies involved" are "the most serious offense[s] of which the [defendant] was convicted." *People v. Ritchey*, 286 Ill. App. 3d 848, 851 (1997).

¶ 47    All offenses of which defendant was convicted are Class X felonies. The base sentencing range for a Class X felony is 6 to 30 years in prison. 730 ILCS 5/5-4.5-2(a) (West 2016). But when determining the maximum total sentence allowed under section 5-8-4(f)(2), we must consider the maximum sentence authorized on a Class X felony for *any* defendant, not just "the maximum [sentence] for which a particular defendant is eligible." *People v. Myrieckes*, 315 Ill. App. 3d 478, 482 (2000). That is, we must consider the maximum Class X extended-term sentence even if this particular defendant is not eligible for extended-term sentencing. The maximum extended-term sentence for a Class X felony is 60 years in prison. 730 ILCS 5/5-4.5-2(a) (West 2016). So, when a trial court imposes consecutive sentences for multiple Class X felonies based on a single course of conduct, pursuant to section 5-8-4(f)(2), the maximum total sentence is 60 years plus 60 years: 120 years. *Myrieckes*, 315 Ill. App. 3d at 482. We hold that defendant's total sentence of 121 years violates section 5-8-4(f)(2) because it exceeds the 120-year limit by one year.

¶ 48    Defendant argues that, in this case, the maximum total sentence permitted under section 5-8-4(f)(2) is 80 years, not 120 years, because the State did not seek extended-term sentencing and the trial court did not find the aggravating factors necessary to impose an extended-term sentence. According to defendant, the maximum non-extended-term sentence he could receive for ACSA is 30 years as a Class X felony plus the 10-year enhancement for using a weapon, for a total of 40 years, and 40 years plus 40 years equals 80 years. We disagree. As explained above, the calculation pursuant to section 5-8-4(f)(2) asks what the maximum possible sentence, including extended-term sentencing, could be on the two most serious felonies. *Id.* Courts have consistently rejected defendant's argument and have found that the "maximum terms authorized" by section 5-8-4(f)(2) includes the maximum extended term. See, *e.g.*, *Thompson*, 2022 IL App (2d) 190950-U, ¶ 35;

*People v. Dalcollo*, 2024 IL App (3d) 220153-U, ¶ 20; *People v. Schneider*, 2024 IL App (4th) 230524-U, ¶¶ 66-68; *People v. Beck*, 190 Ill. App. 3d 748, 763-64 (1989); *People v. Woods*, 131 Ill. App. 3d 51, 55 (1985). Courts have reached this conclusion based on the plain language of the sentencing statutes and we agree. Section 5-8-4(f)(2) limits the total sentence to "the sum of the maximum terms authorized under Article 4.5 of Chapter V for the 2 most serious felonies." 730 ILCS 5/5-8-4(f)(2) (West 2016). Article 4.5 of Chapter V states that "[t]he sentence of imprisonment for an extended term Class X felony *** shall not be less than 30 years and not more than 60 years." *Id.* § 5-4.5-25(a). The plain statutory language, therefore, includes extended-term sentencing in the section 5-8-4(f)(2) calculation.

¶ 49    Defendant also argues that this interpretation of section 5-8-4(f)(2) violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 466. Our supreme court has rejected the argument that calculating a defendant's maximum total sentence based on the extended-term sentence for a Class X felony violates *Apprendi*. *People v. Harris*, 203 Ill. 2d 111, 120 (2003).

¶ 50    We hold that the trial court's imposition of a total sentence greater than 120 years constitutes second-prong plain error because the court imposed a sentence more than the total maximum permitted by section 5-8-4(f)(2). A trial court's error with respect to the maximum sentence can constitute second-prong plain error. *People v. Quinones*, 362 Ill. App. 3d 385, 398 (2005); see also *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 56. Defendant's total sentence cannot exceed 120 years, so resentencing is required. However, as we will explain below, defendant

already received the minimum sentence on all ACSA counts. Therefore, his sentence for aggravated kidnapping is only the sentence the trial court can reduce to comply with section 5-8-4(f)(2). That is why we remand for resentencing on aggravated kidnapping only and affirm defendant's 16-year sentences on six counts of ACSA.

¶ 51                                C. Excessive Sentence

¶ 52    Finally, defendant argues that his sentence is excessive and disproportionate. We have already decided to vacate defendant's sentence for aggravated kidnapping, and remand this conviction for resentencing. Therefore, we review this issue only as to defendant's ACSA sentences.

¶ 53    The proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." We can only modify a defendant's sentence if we find that the trial court abused its discretion. *People v. Cornejo*, 2020 IL App (1st) 180199, ¶ 137. A sentencing court abuses its discretion when the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 54    As explained above, each of defendant's ACSA convictions has a minimum sentence of 16 years: 6 years as a Class X felony plus a 10-year enhancement for his use of a weapon during his sexual assault of C.E. Defendant received the minimum 16-year sentence on all ACSA counts, so we cannot find that the trial court abused its discretion. On the contrary, it would have been an abuse of discretion for the trial court to impose lower sentences on the ACSA counts. "While a trial court has great discretion regarding the imposition of sentence, that discretion must be

exercised within the minimum and maximum limits fixed by the legislature." *People v. Gardner*, 22 Ill. App. 3d 203, 204 (1974) (citing *People v. Richeson*, 24 Ill. 2d 182, 185 (1962)).

¶ 55 Defendant's argument on this point focuses on his "*de facto* life sentence" of 121 years. By and large, we need not address this argument because we have already ordered remand and resentencing such that defendant's total sentence does not exceed 120 years. However, we note that defendant will inevitably receive a lengthy sentence even if the trial court imposes the minimum sentence for aggravated kidnapping on remand. As explained above, the trial court must impose consecutive sentences on all seven convictions, and the ACSA convictions each carry a minimum sentence of 16 years. The ACSA convictions alone will produce a total sentence of at least 96 years and the trial court has no authority to sentence defendant below that minimum. See *id.* (trial court lacked authority to impose a sentence less than the statutory minimum for a sexual assault conviction). Accordingly, we reject defendant's arguments regarding his allegedly "disproportionate" and "excessive" sentence.

¶ 56 III. CONCLUSION

¶ 57 For the foregoing reasons, we affirm defendant's sentences for ACSA. We vacate defendant's conviction and sentence for aggravated kidnapping as charged in count I. We remand with directions that the trial court enter a conviction for aggravated kidnapping as charged in count II and sentence defendant on that count such that his total sentence complies with section 5-8-4(f)(2). Finally, we note that the mittimus incorrectly States that defendant was convicted of ACSA for violation of section 11-1.30(a)(8) when he was in fact convicted of ACSA for violation of violation of section 11-1.30(a)(1). The trial court should ensure that the mittimus is correct upon resentencing.

¶ 58    Affirmed in part, vacated in part; remanded with directions.