THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
OLLIE PAINO, Defendant-Appellant.
First District (5th Division)   No. 84—0867

Opinion filed October 11, 1985.

PINCHAM, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Alison J. Norwood, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Christopher J. Cummins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant, Ollie Paino, was convicted of rape, armed robbery and deviate sexual assault. (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1, 18—2, 11—3.) He was sentenced to a 30-year term for rape to be served consecutive to concurrent 25-year terms for armed robbery and deviate sexual assault. Defendant contends on appeal that the trial court erred in failing to suppress his lineup identification because it was obtained in violation of his right to counsel, that he was prejudiced by the introduction of certain hearsay evidence and

that his sentences were excessive.

Complainant testified that at 11 p.m. on June 10, 1982, she was entering her apartment on North Sheridan Road in Chicago when a man, subsequently identified as Floyd Mulkey, put a gun to her head and forced her into a car driven by defendant. The men drove north on Lake Shore Drive for some time, then parked under an overpass and raped complainant. After stopping at a gas station for directions, they drove to the south side of the city. During this time, Mulkey and defendant rummaged through complainant's briefcase and purse and removed $10.

Upon reaching the south side, defendant let Mulkey out of the car for the purpose of buying beer. He then drove complainant to an area under the elevated tracks, turned on the interior car light, and forced her to submit to acts of oral and anal intercourse. When Mulkey returned to the car, complainant persuaded the men to release her in exchange for her bankcard and access code number. She then entered a cab and told the driver to take her to the police. Complainant stated that the ordeal lasted approximately three hours.

Officer Carol Lewandowski testified that when she encountered complainant at 2 a.m. on June 11, 1982, complainant was very upset and stated that she had been raped. After providing the officers with a description of the offenders, she was taken to a hospital for treatment.

Forest Mayfield testified that he was driving on Sheridan Road on the evening in question and observed a man abduct complainant at gunpoint. He followed the car for several blocks, ascertained the license plate number and pulled into a nearby condominium building where his wife called the police. Mayfield then continued to drive around the area in search of the car. When he saw a squad car he flagged it down and gave the police the license plate number and description of the car.

Detective Patricia Riegler testified that she listened to a tape of a "911" telephone call in which defendant's brother, Joe Paino, informed police that defendant had stolen the car used in the offense. Based upon this information, Riegler obtained photographs of possible suspects and displayed them to complainant, who tentatively identified defendant and a man named Kevin Irby. However, in a June 12, 1982, lineup which included Kevin Irby but not defendant, complainant failed to identify anyone. Four days later, complainant viewed a lineup which included defendant's brother, Joe Paino, and again failed to make an identification. On June 18, 1982, complainant viewed a third lineup which included defendant, and positively identified him as

one of her attackers. She identified Floyd Mulkey in a separate lineup.

Prior to trial, defendant moved to suppress his lineup identification on the grounds that his right to counsel had been violated because he was indicted by the grand jury on the same day that he was identified in a lineup without benefit of counsel. It was established that the lineup took place at 10 a.m., but no evidence was presented as to the time the indictment was obtained. The trial court denied the motion.

At the sentencing hearing, defendant was sentenced to a 30-year term for rape to be served consecutive to his concurrent 25-year terms for armed robbery and deviate sexual assault. His accomplice, Floyd Mulkey, entered a negotiated plea of guilty to the offenses of rape, deviate sexual assault, aggravated kidnaping and armed robbery and received concurrent 18-year sentences. The circumstances surrounding the determination of defendant's sentences will be detailed later in connection with our discussion of that issue.

Defendant first contends that the trial court erred in failing to suppress the lineup identification because it was obtained in violation of his sixth amendment right to counsel. He argues that since the lineup was held on the same day he was indicted, his right to counsel had attached.

■■ The right to counsel attaches at or after the initiation of the adversary judicial process. (*Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877.) However, the fact that a defendant was indicted on the same day as the lineup is not in itself sufficient to show that the right to counsel had attached at the time of the lineup. *People v. Harrell* (1982), 104 Ill. App. 3d 138, 432 N.E.2d 1163.

In *People v. Harrell*, as in the case at bar, the State initiated adversarial judicial proceedings against the defendant on the same day that he was identified in a lineup. However, there was no indication in the record as to whether the lineup took place before or after the complaint was filed and the arrest warrant issued. Noting that the existence of error will not be presumed, the court stated that in the absence of evidence showing that the documents in question were obtained before the lineup was conducted, it would resolve the silence of the record against the defendant. Accordingly, the court held that the right to counsel had not attached at the time of the lineup.

■■ We find the instant cause indistinguishable from the situation presented in *People v. Harrell*. Although the record established that the lineup was conducted at 10 a.m., there is no indication of when the grand jury indictment was obtained. Since defendant has failed to

affirmatively show the existence of error, we must presume that his right to counsel had not attached at the time he was identified in the lineup.

Defendant next contends that he was irreparably prejudiced by the introduction of certain hearsay evidence, which was elicited by the State in violation of a pretrial ruling that such evidence could not be used at trial. The evidence in question was Detective Riegler's testimony that she learned from a "911" phone tape that defendant's brother, Joe Paino, had informed the police that defendant had stolen the vehicle used in the offense. Defendant argues that this evidence influenced the jury on the issue of whether he was properly identified as one of the offenders.

It is the duty of the reviewing court to consider the trial record as a whole in determining whether a new trial is warranted. (*People v. Ammons* (1983), 120 Ill. App. 3d 855, 458 N.E.2d 1031.) A conviction will not be reversed because of alleged errors in the trial court unless it appears that the guilty finding was the result of such errors. (*People v. Morehead* (1970), 45 Ill. 2d 326, 259 N.E.2d 8, *cert. denied* (1970), 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251.) Generally, a trial court's prompt action in sustaining an objection and instructing the jury to disregard the improper testimony serves to cure any potential prejudice. *People v. Seider* (1981), 98 Ill. App. 3d 175, 423 N.E.2d 1217.

Detective Riegler testified that she listened to a tape of a telephone call regarding an automobile theft which led her to obtain photographs of persons possibly involved in the instant offense. A defense objection was sustained at this point, and the trial court instructed the jury to disregard Riegler's statement. Subsequently, on cross-examination, defendant elicited further testimony from Riegler showing that the call was made by a man named Joe Paino, who indicated that the car driven by defendant on the night in question was a stolen vehicle. In our judgment, the trial court's action in sustaining defendant's objection and instructing the jury to disregard the statements served to cure any prejudice which may otherwise have resulted. Furthermore, we do not believe that the testimony in question influenced the outcome of the trial in light of the clear and convincing identification testimony of complainant, who observed defendant under conditions which would permit a positive and reliable identification to be made. We also note that defendant's assertion that the trial court precluded him from clarifying the objectionable testimony is not supported by the record.

Defendant next contends that the trial court erred in or-

dering that his 30-year sentence for rape run consecutive to his concurrent 25-year sentences for armed robbery and deviate sexual assault.

The relevant statute provides in pertinent part:

"(a) When multiple sentences of imprisonment are imposed on a defendant at the same time *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(a).)

The dissent concludes, *sua sponte*, that in addition to the requirement of this statute the total length of consecutive sentences may not exceed the ordinary maximum penalty for any one of the offenses at issue unless one of the prerequisite aggravating factors supporting an extended term (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)) is present. A second *sua sponte* contention of the dissent is that section 5—8—4 should not be construed to permit imposition of consecutive sentences where there has been a substantial change in the nature of the criminal objective but no Class X or Class 1 felony is involved and no severe bodily injury has been inflicted.

When a statute is unambiguously worded it should be enforced according to the plain meaning of its language. (*In re Estate of Donnelly* (1983), 111 Ill. App. 3d 1035, 1038, 445 N.E.2d 49, 51.) The plain language of section 5—8—4 authorizes imposition of a consecutive sentence in cases not involving Class X or Class 1 felonies and not involving severe bodily injury if there has been a substantial change in the nature of the criminal objective and if the court finds that a consecutive sentence is required to protect the public from further criminal conduct by the defendant. There is no requirement that the facts also establish one of the aggravating factors necessary

under section 5—5—3.2(b) for imposition of an extended term. Our courts have consistently read section 5—8—4 in this manner, and we find no basis for imposing additional requirements. *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 295, 454 N.E.2d 1055,1057; *People v. Walker* (1983), 113 Ill. App. 3d 1074, 1081, 448 N.E.2d 208, 213, *cert. denied* (1984) 465 U.S. 1031, 79 L. Ed. 2d 697, 104 S. Ct. 1297; see *People v. Hicks* (1984), 101 Ill. 2d 366, 373, 462 N.E.2d 473, 476.

■ Defendant contends that the consecutive sentence was improper because the offenses at issue were part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. The term "conduct" refers to an act or series of acts and the accompanying mental state. (Ill. Rev. Stat. 1983, ch. 38, par. 2—4.) It has been held that, under the above-quoted provision, the imposition of consecutive sentences depends upon both the existence of separate acts and separate motivation behind those acts. *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 295, 454 N.E.2d 1055, 1057; *People v. Rose* (1979), 75 Ill. App. 3d 45, 55, 393 N.E.2d 698, 706; *People v. Brown* (1975), 31 Ill. App. 3d 547, 549, 334 N.E.2d 323, 324.

In *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 454 N.E.2d 1055, the defendant forced the victim into his car at knifepoint and drove to Williamson County, where he forced her to engage in sexual intercourse and fellatio. He then took money from the .victim's purse. After robbing her, he drove to Jackson County, told her that he was going to release her, then raped her again. He was sentenced to an extended term of 30 years for aggravated kidnaping to run concurrently with extended terms of 60 years for each of the Williamson County offenses of rape and deviate sexual assault. In addition, he was sentenced to an extended term of 60 years for the Jackson County rape, which was to run consecutive to the Williamson County sex offenses. In upholding the consecutive offenses, this court found that although the offenses were committed during a continuous course of conduct, there was a substantial change in the nature of defendant's criminal intent from rape to armed robbery and that the second rape involved a "renewed criminal objective of sexual assault." (*People v. Perruquet* (1983), 118 Ill. App. 3d 293, 297, 454 N.E.2d 1055, 1058.) Similarly, in *People v. Rose* (1979), 75 Ill. App. 3d 45, 390 N.E.2d 698, the defendant raped the victim, then grabbed her purse as she attempted to escape. Consecutive sentences for rape and robbery were upheld because the defendant's initial objective to rape the victim changed to the objective of robbery when he took her purse.

In *People v. Brown* (1975), 31 Ill. App. 3d 547, 334 N.E.2d 323, consecutive sentences for rape and armed robbery were affirmed. There, the defendant accosted a woman on the street with a knife, announced his intention to rape her, and forced her into a car. He drove away with her for half an hour, then raped her in the back seat and returned to the front seat, where he took money from her purse and then let her go. The court found that there had been a substantial change in the nature of defendant's criminal objective from raping the victim to robbing her.

Defendant has cited *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 439 N.E.2d 543. The appellate court in *Fieberg* ordered that the defendant's sentence for aggravated battery be served concurrently with the sentence for robbery instead of consecutively, as ordered by the trial court. It there held that the aggravated battery of macing the police officer and the robbery in taking his gun were motivated by the defendant's single criminal objective of evading capture following his commission of the other offenses for which he was also sentenced. In addition, the appellate court determined that the trial court "apparently saw both those crimes to be part of a single course of conduct" and therefore had no basis for consecutive sentences. (108 Ill. App. 3d 665, 671-72, 439 N.E.2d 543, 548.) This is unlike the facts in the instant case.

■ It is generally within the discretion of the trial court to determine whether multiple sentences are to be served concurrently or consecutively (*People v. Dye* (1977), 69 Ill. 2d 298, 305, 371 N.E.2d 630, 633), and the decision will not be disturbed absent a showing of an abuse of discretion. *People v. Coleman* (1980), 91 Ill. App. 3d 646, 654, 415 N.E.2d 553, 559.

■ The trial court in the instant case addressed this specific issue at the sentencing hearing before imposing the consecutive sentences. It was emphasized that this was a three-hour reign of terror in which the defendant, initially with Mulkey and later alone, committed three separate offenses. Each offense took place at different time intervals, at locations distant from each other, and under different circumstances. The rapes occurred in the far north section of Chicago or a suburb thereof, the robbery en route to the south side of Chicago, and the deviate oral and anal sexual assaults on the south side of Chicago after Mulkey had left the automobile and defendant had then driven to a location under the elevated tracks. The trial court after argument stated: "[C]onsecutiveness is based upon the fact that the Court finds that there was a changing of the criminal objectives as well as the fact that it is necessary in the Court's mind to protect the public from

defendants like Mr. Paino." Clearly, there was a substantial change in the nature of the criminal objective regarding the three distinct offenses. The consecutive sentence was fully warranted, and the trial court did not abuse its discretion in so imposing it.

■■ As stated in *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 297, 454 N.E.2d 1055, 1058, to hold that under these circumstances consecutive sentences are precluded would be contrary to the deterrent purpose of multiple sentencing, which is to discourage the commission of further offenses once an initial offense has been completed.

Defendant's final contention is that his sentences were impermissibly disparate from the concurrent 18-year terms received by his co-offender, who entered a negotiated plea of guilty.

■■ While similarly situated defendants should receive similar treatment in sentencing (*People v. Martin* (1980), 81 Ill. App. 3d 238, 245, 401 N.E.2d 13, 18), a disparity may be warranted by differences in criminal background or degree of participation in the offense (*People v. Stambor* (1975), 33 Ill. App. 3d 324, 326, 337 N.E.2d 63, 65). Also, certain dispositional concessions may be made by the court to a defendant who pleads guilty. (*People v. Sivels* (1975), 60 Ill. 2d 102, 104-06, 324 N.E.2d 422, 424.) In considering the appropriateness of punishment, a reviewing court must give great weight to the decision of the trial court. *People v. Bergman* (1984), 121 Ill. App. 3d 100, 108, 458 N.E.2d 1370, 1378-79.

■■ Although we have not been presented with information concerning Floyd Mulkey's criminal background, the assistant State's Attorney at the sentencing hearing did inform the court, without contradiction from defense counsel, that Mulkey had no criminal background compared with Paino's. Furthermore, it is clear that there was a difference in the degree of participation in the offenses. Complainant testified that although both men raped and robbed her, defendant alone forced her to submit to two acts of deviate sexual assault after Mulkey left the car to buy liquor. This factor, as well as Mulkey's negotiated plea of guilty, apparently accounted for the disparity in sentences. We thus disagree with defendant's assertion that he was penalized for exercising his right to a jury trial.

Another issue raised *sua sponte* in the dissent is whether the court's finding of the need to protect the public was sufficient to satisfy that statutory requirement. It is suggested that there was no factual basis for this finding.

■■ ■ At the sentencing hearing the State noted that defendant had been convicted of one felony theft in 1981, for which he received two years probation, and two felony thefts in June 1983, for

which he received a sentence of three years. The record establishes that the crimes now before us were committed while the defendant was on bond awaiting trial on those latter two offenses. (He pleaded guilty to them while awaiting trial in this cause.) The State specifically cited these factors as one basis for the need for a consecutive sentence to protect the public from future criminal conduct by the defendant. The defendant's criminal history was a valid basis for imposition of the consecutive sentence. (*People v. Pittman* (1982), 93 Ill. 2d 169, 178, 442 N.E.2d 836, 840.) That the trial court did not specifically cite the basis for its determination of the need to protect the public cannot be a ground of error on appeal as defendant never sought amplification of this finding at the sentencing hearing. *People v. Hicks* (1984), 101 Ill. 2d 366, 374, 462 N.E.2d 473, 476.

Accordingly, the judgment of the circuit court is affirmed.

Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that defendant be assessed $50 as costs for the State's defending this appeal, and incorporate it as part of the judgment.

Affirmed.

MEJDA, P.J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. It is clear from the trial record that unconstitutionally disparate and illegally consecutive sentences, totaling 55 years, were imposed on Paino simply because he exercised his constitutional right to a trial by a jury, rather than plead guilty.

Defendant, Ollie Paino, age 19, and Floyd Mulkey, age 17, were charged with aggravated kidnaping, rape, armed robbery, deviate sexual assault and armed violence. Mulkey pleaded guilty to aggravated kidnaping, rape, armed robbery and deviate sexual assault, and the court imposed a sentence of 15 years' imprisonment on the aggravated kidnaping offense, to be served concurrently with 18 years' imprisonment on the rape, armed robbery and deviate sexual assault offenses. The prosecutor entered a *nolle prosequi* on the armed violence offense. Thereafter, Paino chose to exercise his constitutional right to a trial by a jury, which found him guilty of rape, armed robbery and deviate sexual assault. The court imposed concurrent 25-year imprisonment sentences on the armed robbery and deviate sexual assault offenses, to be served consecutively to a 30-year imprisonment sentence

on the rape offense.[1]

## I. THE DEFENDANT'S UNEQUAL AND UNCONSTITUTIONALLY DISPARATE SENTENCES

Paino urges that there is a constitutionally impermissible disparity between his aggregate 55-year consecutive imprisonment sentence and Mulkey's aggregate 18-year concurrent imprisonment sentence. Paino urges that his 55-year sentence is over three times greater than Mulkey's 18-year sentence. An analysis of the extent of each defendant's participation in the offenses and their backgrounds substantiates Paino's contention that his sentence is, in fact, unconstitutionally disparate.

It was Mulkey who abducted the complainant on a public street, put a gun to her head and forced her into the car. Mulkey held the gun on the complainant while Paino drove to a secluded location. At this secluded location, Mulkey was the first to rape the complainant. Paino followed. Thereafter, Mulkey held the gun on the complainant and threatened her if she made an outcry, while Paino drove to the south side of Chicago.

From the trial testimony, it is unclear where Mulkey sat in the car while en route to Chicago's south side. The complainant testified at the trial that en route to the south side, she was in the back seat of the car. She testified further:

"Q. What happened in the automobile on the way to the south side?

A. They took my purse and my brief case, went through them and took the ten dollars out of my purse."

This testimony was not clarified at trial. Whether the complainant meant by this testimony that Mulkey went through her purse and took her money while Paino drove the car, or that Paino and Mulkey went through her purse and took her $10 while Paino drove the car is unclear. It can be reasonably assumed from the facts and the complainant's foregoing testimony that Mulkey rifled the complainant's purse while Paino drove the car.

In the supplemental record of Mulkey's guilty plea proceedings, which was made a part of Paino's record on appeal, the assistant State's Attorney stated to the trial court that Paino drove around looking for the expressway to the south side of the city and that

---

[1]The trial judge who presided over Mulkey's guilty plea proceedings and imposed Mulkey's 18-year imprisonment sentence also presided over Paino's jury trial and imposed Paino's aggregate 55-year imprisonment sentence.

"Mulkey got into the back seat, threatened [the complainant] with a gun, [and] again told her to keep quiet while the driver was asking questions. Finally, they got onto the expressway and they drove down to the southside ***." During Mulkey's guilty plea proceedings, the trial court was additionally informed by the assistant State's Attorney that Mulkey confessed his involvement in the offenses. The assistant State's Attorney advised the trial court that Mulkey stated in his confession that while en route to the south side, "[H]e took the victim's purse and searched it and removed about ten or fifteen dollars ***. *** [H]e gave Ollie Paino only about three dollars and keep the rest for himself, stating that he duped Ollie [by telling] him that this was all she had." From the foregoing, the conclusion is inescapable that Mulkey was the one who robbed the complainant, while Paino drove the car. Of course, Paino is equally guilty, by accountability, of Mulkey's armed robbery of the complainant.

When they arrived on the south side, Mulkey left the car to get some beer. During Mulkey's absence, Paino had anal and oral intercourse with the complainant. The trial court accepted Mulkey's guilty plea to deviate sexual assault of the complainant, based on Mulkey's accountability.

Later, while on the lake front, the complainant, as an inducement to her assailants to release her, agreed to give them her bankcard and access code number so that they could withdraw money from her bank account at a downtown cash station. They went to a downtown cash station, Mulkey took the complainant to a cab and she gave him her access code number. The complainant fled in the cab. At the cash station, Mulkey withdrew between $200 and $300 from the complainant's bank account and gave part of the money to Paino.

The court sentenced Paino to 30 years' imprisonment for the rape offense, which was 12 years in excess of the 18-year imprisonment sentence given Mulkey, even though it was Mulkey who abducted the complainant and who initiated the rape offenses. The court also sentenced Paino to a disparate 25-year imprisonment sentence for the armed robbery of the complainant, even though he was guilty of this offense only as an accomplice, via accountability. Yet, the court sentenced Mulkey, the principal armed-robbery offender, to only 18 years for the armed robbery. Thus, the sentence of Paino, the armed-robbery accomplice, was seven years in excess of the sentence of Mulkey, the principal armed-robbery offender. Paino's sentence for rape and armed robbery totaled 55 years, which was more than 37 years and over three times greater than Mulkey's 18-year sentence. Paino's aggregate 55-year sentence is inordinate when compared to Mulkey's

18-year imprisonment sentence for the same offenses. Paino's sentence is patently unconstitutionally disparate. Although despicable offenses were committed upon the complainant, the hideousness of the offenses should not have deterred the trial court from its duty to dispense evenhanded justice. The dastardly conduct of these offenders and the complainant's dreadful hours of horror should not have motivated or influenced the trial court to convolute its rationale in order to impose disparate sentences.

The fourteenth amendment to the Constitution of the United States provides, "No State shall *** deny to any person within its jurisdiction the equal protection of the laws." Article I, section 2 of the Illinois Constitution guarantees that, "No person shall be *** denied the equal protection of the laws." (Ill. Const. art. I, sec. 2.) Paino's disparate 55-year imprisonment sentence for the rape and armed robbery of the complainant and Mulkey's 18-year imprisonment sentence for the same offenses clearly violates Paino's Federal and State constitutional right to the equal protection of the laws.

In *United States v. Wiley* (7th Cir. 1959), 267 F.2d 453, the court vacated the defendant's three-year imprisonment sentence and remanded the case to the district court with directions to properly consider Wiley's application for probation. On remand, the district court held an evidentiary hearing on Wiley's probation application, denied probation and reimposed the three-year sentence. On Wiley's second appeal, he contended that there was an unconstitutional disparity between his three-year imprisonment sentence and a codefendant's two-year imprisonment sentence. (*United States v. Wiley* (7th Cir. 1960), 278 F.2d 500.) The court of appeals again vacated Wiley's three-year sentence and again remanded the case to the district court "for a proper sentence." The record in *Wiley* revealed that he was less culpable than the other defendants in their unlawful possession of merchandise stolen while in interstate commerce, for which they were convicted.

In the pending case, Paino does not contend that his involvement was minimal. Paino's contention is that his participation in the offenses does not constitutionally permit an imprisonment sentence which is three times greater than the 18-year sentence imposed on Mulkey. In *Wiley*, in the court's second remandment for imposition of "a proper sentence," the court stated:

> "[W]here the facts appearing in the record point convincingly to the conclusion that the district court has, without any justification, arbitrarily singled out a minor defendant for the imposition of a more severe sentence than that imposed upon the co-

defendants, *this court will not hesitate to correct the disparity.* In so doing it is exercising its supervisory control of the district court in aid of its appellate jurisdiction. This control is necessary to proper administration in the federal system." (Emphasis added.) 278 F.2d 500, 503.

No imprisonment sentence within the 30-year statutory maximum for each of the Class X felonies committed by Paino and Mulkey would have been legally too severe. Their offenses were despicable and Paino well deserved a substantial imprisonment sentence. However, Paino and Mulkey's sentences should have been comparable, but they were not. Based on the circumstances of this case, Paino's aggregate 55-year imprisonment sentence is unconstitutionally disparate and impermissible. It should be corrected. (*United States v. Wiley* (7th Cir. 1960), 278 F.2d 500, 503.) It is not the severity of Paino's sentences which causes them to be illegal, rather, it is their inequality.

## II. PAINO'S IMPROPER PUNISHMENT

Paino persuasively contends that he was punished with the severe 55-year imprisonment sentence because he chose not to plead guilty, but rather elected to be tried, and by a jury. Paino's claim that his aggregate 55-year imprisonment sentence was a penalty for exercising his constitutional right to a jury trial is meritorious.

Paino stood trial and put the State to its task to prove him guilty beyond a reasonable doubt. It is noteworthy that Paino did not present a fabricated defense at his trial. Nor did he perjure himself by testimonially denying commission of the offenses. In fact, the only evidence presented on Paino's defense was the testimony of a Chicago police officer that he ordered the abandoned automobile, in which the offenses occurred, to be towed to a police pound. Thereupon, Paino rested his defense. Horrible crimes were committed upon the complainant. But the horror of the offenses should not have been relied on to punish Paino for exercising his constitutional right to a trial, and by a jury.

In *United States v. Wiley* (7th Cir. 1960), 278 F.2d 500, 504, the court emphatically pointed out:

"Nor can the disparity in sentences imposed here be justified on the ground that Wiley asked for a trial. As we said in our former opinion, 267 F.2d at page 456:

'*** the defense certainly was not frivolous nor does it appear to have been presented in bad faith.'

Our part in the administration of federal justice requires that we reject the theory that a person may be punished because in

good faith he defends himself when charged with a crime, even though his effort proves unsuccessful. *It is evident that the punishment imposed by the district court on Wiley was in part for the fact that he had availed himself of his right to a trial, and only in part for the crime for which he was indicted.*" (Emphasis added.)

In the case before us, as stated above in *Wiley*, it is evident that the punishment imposed by the trial court on Paino was in part for the fact that he had availed himself of his right to a trial, and only in part for the crimes for which he was convicted.

Justice Duffy stated in his concurring opinion in *Wiley*:

"A defendant in a criminal case should not be punished by a heavy sentence merely because he exercises his constitutional right to be tried before an impartial judge or jury. \*\*\* *A realistic appraisal of the situation compels the conclusion that Wiley's comparatively severe sentence was due to the fact that he stood trial.*" (Emphasis added.) (278 F.2d 500, 504.)

In the case at bar, a realistic appraisal likewise compels no other conclusion than that Paino's comparatively severe sentence was due to the fact that he stood trial. See *People v. Moriarty* (1962), 25 Ill. 2d 565, 567, 185 N.E.2d 688, where the supreme court quoted the above language in *Wiley* in reversing and remanding the defendant's sentence which the trial court expressly stated it imposed because the defendant exercised his constitutional right to be tried by a jury.

In *People v. Jones* (1969), 118 Ill. App. 2d 189, 254 N.E.2d 843, the codefendant Harris (like the codefendant Mulkey) pleaded guilty and was sentenced to the penitentiary for a term of six to 12 years. The defendant Jones (like the defendant Paino) exercised his constitutional right to be tried by a jury, which found him guilty of the same offense. The judge who sentenced Harris to six to 12 years' imprisonment also sentenced Jones to 10 to 20 years' imprisonment. In reducing Jones' sentence, the appellate court held:

"Harris, who pleaded guilty, received a sentence of six to twelve years, and Jones, who exercised his right to a jury trial, was sentenced to ten to twenty years by the same judge. *It seems to be a reasonable inference that Jones was penalized for exercising his constitutional rights.*

\* \* \*

\*\*\* [W]e have concluded, after considering the nature of the offense and the attendant facts and circumstances here, that it is manifest from the instant record that *the sentence is excessive and not justified by any reasonable view which might be*

*taken of the record,* and it calls for the exercise of the power to 'reduce the punishment imposed by the trial court.' (Illinois Supreme Court Rule 615(b) (4).) We believe fundamental fairness in sentencing requires a reduction of defendant's sentence ***." (Emphasis added.) 118 Ill. App. 2d 189, 197-98.

The majority concludes that Paino was not penalized for exercising his right to a jury trial and approves Paino's disparate sentences because "there was a difference in the degree of participation in the offenses. Complainant testified that although both men raped and robbed her, defendant alone forced her to submit to two acts of deviate sexual assault[2] after Mulkey left the car to buy liquor. This factor, as well as Mulkey's negotiated plea of guilty, *apparently* accounted for the disparity in sentences." (Emphasis added.) But Paino's deviate sexual assaults do not account for the disparity in sentences.

Significantly, as previously pointed out, the trial court did not impose Paino's armed robbery and rape sentences consecutive to his deviate sexual assault sentence. Paino's 25-year sentence for deviate sexual assault was concurrent to his 25-year sentence for armed robbery, and both were consecutive to his 30-year sentence for rape. Thus, Paino received an aggregate of 25 years' imprisonment for armed robbery and rape, in the absence of his 25-year imprisonment sentence for deviate sexual assault. Mulkey was equally culpable for the armed robbery and rape offenses, but unlike the aggregate 55-year imprisonment sentence imposed on Paino for those offenses, Mulkey received a disparate 18-year sentence. Mulkey's negotiated plea of guilty is indeed, in my judgment, an inadequate basis for the gross disparity between Mulkey's and Paino's sentences.

The majority suggests that the disparity in the sentences was justified because of Paino's criminal background. Mulkey's criminal background does not appear in the appeal record. The trial court did not rely on any difference between Mulkey's and Paino's criminal backgrounds in imposing the disparate sentences. When the instant charges were brought against Paino on June 22, 1982, a February 10, 1982, auto theft charge and a December 10, 1981, auto theft charge were pending against him. Paino pleaded guilty to both of these offenses and was sentenced to three years' imprisonment. Trial on the instant charges had not yet commenced. These two auto theft convic-

---

[2]The indictment charged the defendant with two counts of deviate sexual assault, *i.e.,* forced anal intercourse and oral copulation. The jury was instructed on both these offenses. However, the jury returned only one verdict of "guilty of the offense of deviate sexual assault." This verdict did not specify which of the two deviate sexual assault offenses the defendant was found guilty of committing.

tions, coupled with a May 1981 theft conviction, for which he was placed on two years' probation, were certainly an inadequate basis for Paino's exorbitantly disparate 55-year imprisonment sentence in the case before us.

### III. THE ILLEGAL CONSECUTIVE SENTENCES

At the sentencing hearing, there was considerable argument by the attorneys in support of and in opposition to the imposition of consecutive sentences. The trial court concluded:

> "THE COURT: To the rape the court hereby sentences you [Paino] to 30 years in the Illinois Department of Corrections and for armed robbery and deviate sexual assault the Court hereby sentences you to 25 years in the Illinois Department of Corrections, *both sentences to run concurrent.*
>
> You have a right to appeal. In the event you wish to appeal you must file a notice of appeal within 30 days of today's date. If you cannot afford an attorney one will be appointed for you free of charge. You would also be given a copy of the transcript of your trial was well as any other motions that were held during the prosecution of the case. Mittimus to issue instanter." (Emphasis added.)

Although the trial judge's statement, "both sentences to run concurrent," was unambiguous, the assistant State's Attorney inquired of the trial judge as follows:

> "MR. WARNICK [assistant State's Attorney]: Your Honor, *if I may ask for clarification.* You stated that there would be 30 years for the rape and then you stated 25 years for the armed robbery and deviate sexual assault *concurrent.*
>
> THE COURT: No, no, 30 years for the rape. The armed robbery and the deviate sexual assault 25 years concurrent with each other but *consecutive* to the sentence for the rape.
>
> MR. WARNICK: Thank you, Your Honor." (Emphasis added.)

Seemingly, the assistant State's Attorney's request for clarification of the sentences was construed by the trial judge as his expression of dissatisfaction with the court's imposition of concurrent sentences. This apparently induced the trial judge to change the sentences from concurrent to consecutive.

The Illinois State legislature imposed a maximum of 30 years' imprisonment for the Class X felonies for which Paino was convicted. The legislature further provided for an extension of the 30-year maximum when certain designated aggravating factors are present, *i.e.*, if

the victim was physically handicapped or under 12 or over 60 years of age, or if the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. As will be explained, none of these factors was present in this case. It would be ludicrous that a trial court could circumvent the legislatively decreed 30-year imprisonment maximum, in the absence of any of the enhanced penalty aggravating factors, merely by imposing consecutive sentences.

Rape, deviate sexual assault and armed robbery are Class X felonies. (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1(c), 11—3(b), 18—2(b).) Section 5—8—1(a)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(3)) provides:

> "A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> * * *
>
> (3) for a Class X felony, the sentence shall be not less than 6 years and not more than 30 years * * *." (Emphasis added.)

Thus, a 30-year imprisonment sentence is the maximum sentence that could have been lawfully imposed for rape, armed robbery and deviate sexual assault, unless certain designated aggravating factors were present which would merit imposing an extended term. The trial judge in the present case did not find and indeed could not have found any of the aggravating factors upon which an extended term could have been imposed under the applicable section of the extended-term statute, section 5—8—2(a)(2) (Ill. Rev Stat. 1981, ch. 38, par. 1005—8—2(a)(2)). That section provides:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 [30 years] for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
>
> * * *
>
> (2) for a Class X felony, a term shall be not less than 30 years and not more than 60 years * * *."

The aggravating factors which the trial judge must find as a prerequisite to imposing an extended term of imprisonment of not more than 60 years are as follows:

> "* * * [T]he following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the

date the crime was committed:

    (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

    (2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; or

    (3) When a defendant is convicted of any felony committed against

        (i) a person under 12 years of age at the time of the offense;

        (ii) a person 60 years of age or older at the time of the offense; or

        (iii) a person physically handicapped at the time of the offense." Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b).

Since none of the foregoing aggravating factors were present in the pending case, the maximum sentence for the rape, armed robbery and deviate sexual offenses was 30 years. Paino's 55-year aggregate sentence was therefore excessive and invalid.

Contrary to the majority's assertion, I do not believe that "the total length of consecutive sentences may not exceed the ordinary maximum penalty for any one of the offenses at issue unless one of the prerequisite aggravating factors supporting an extended term is present." Rather, I am of the opinion that in the absence of any aggravating factors, a trial court cannot circumvent or exceed the legislature's statutory maximum imprisonment sentence by imposing consecutive sentences. Section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(a)) provides:

"(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *The court shall not impose consecutive sentences* for offenses which were committed as part of a single course of conduct during which there was *no substantial change* in the nature of the criminal objective, *unless, one of the offenses* for which defendant was convicted *was a Class X or Class 1 felony and the defendant inflicted severe bodily injury*, in which event the court may enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court." (Emphasis

added.)

This statute is the sole authority for imposing consecutive sentences and sets forth the prerequisite circumstances and conditions for doing so. In this statute, the legislature defines the only additional means, other than the extended-term statute, by which the maximum penalty for an offense may be enhanced, *i.e.*, via the imposition of consecutive sentences.

The consecutive-sentence statute as stated above provides that the court may impose consecutive sentences for offenses (1) which were committed as a part of a single course of conduct, (2) during which there was *no substantial change* in the nature of the criminal objective, (3) if one of the offenses is a Class X or a Class 1 felony, and (4) if the defendant inflicted severe bodily injury. There is no other statutory provision in the criminal code for the imposition of consecutive sentences.

The consecutive sentencing statute does not state that consecutive sentences may be imposed if there has been a substantial change in the nature of the criminal objective. Certainly, if the legislature had intended that consecutive sentences were to be imposed or could be imposed when there was a substantial change in the nature of the criminal objective, the legislature simply would have so provided. In the absence of any such provision, if consecutive sentences may be imposed where there *has* been a substantial change in the nature of the criminal objective, is the infliction of severe bodily injury by the defendant also a prerequisite condition for imposing consecutive sentences? May consecutive sentences be imposed when there has been a substantial change in the nature of the criminal objective, regardless to whether or not the defendant inflicted severe bodily injury, and regardless to the class of felonies of which the defendant has been convicted? Should these provisions have been appropriately made by legislative enactment? The absence of these provisions from the statute most assuredly should not be legally implemented by unbridled judicial fiat.

The consecutive sentence statute is not only a criminal statute, but it is a criminal statute which also enhances penalties. The doctrine of lenity must be applied, however, and according to the principles of statutory construction, the statute must be strictly construed. In *Ladner v. United States* (1958), 358 U.S. 169, 3 L. Ed. 2d 199, 79 S. Ct. 209, the defendant was sentenced to two consecutive imprisonment terms for assaulting two Federal officers with a deadly weapon, in violation of 18 U.S.C. sec. 254 (1940) (now 18 U.S.C. sec. 111 (1976)). In deciding whether this statute created two separate offenses for

which consecutive sentences could be imposed for shooting two officers from the single discharge of one shotgun, the Supreme Court held:

> "Neither the wording of the statute nor its legislative history points clearly to either meaning. *In that circumstance the Court applies a policy of lenity and adopts the less harsh meaning.* '[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication.' [Citations.] And in *Bell v. United States* 349 U.S. 81, 83, the Court expressed this policy as follows: '*When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.*' [Citations.] *This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.*" (Emphasis added.) 358 U.S. 169, 177-78, 3 L. Ed. 2d 199, 205, 79 S. Ct. 209, 214.

In the case at bar, it is left to pure speculation whether the State legislature intended that consecutive sentences could be imposed, and the prerequisites for such imposition where there has been a substantial change in the nature of the criminal objective. Since the legislature left to the judiciary the task of imputing to the legislature an undeclared will, the ambiguity should be resolved in favor of lenity. *Busic v. United States* (1980), 446 U.S. 398, 408, 64 L. Ed. 2d 381, 390, 100 S. Ct. 1747, 1754; *Simpson v. United States* (1978), 435 U.S. 6, 14, 55 L. Ed. 2d 70, 78, 98 S. Ct. 909, 914. See also *Bifulco v. United States* (1980), 447 U.S. 381, 387, 65 L. Ed. 2d 205, 211, 100 S. Ct. 2247, 2252, where the court stated:

> "[T]he Court has expressed *** 'the rule of lenity.' In past cases the Court has made it clear that *this principle of statutory construction applies* not only to interpretations of the substantive ambit of criminal prohibitions, but *also to the penalties they impose.* ***.
>
> The Court has emphasized that *the 'touchstone' of the rule of lenity 'is statutory ambiguity.'* " (Emphasis added.)

In determining the applicability of the attempted murder, armed violence and aggravated battery statutes under which the defendant was convicted for repeatedly shooting his victim, the supreme court

stated in *People v. Donaldson* (1982), 91 Ill. 2d 164, 168-69, 435 N.E.2d 477:

"If it were its intention the legislature could have expressly provided for separate convictions and sentences on charges of armed violence and its predicate or underlying felony. The Supreme Court in *Bell v. United States* (1955), 349 U.S. 81, 83, 99 L. Ed. 905, 910, 75 S. Ct. 620, 622, observed: 'When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. *When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.*' This court follows a similar policy of lenity in the interpretation of criminal statutes." (Emphasis added.)

And in *Heflin v. United States* (1959), 358 U.S. 415, 419, 3 L. Ed. 2d 407, 410, 79 S. Ct. 451, 453, the Supreme Court said, "[W]e resolve an ambiguity in favor of lenity when required to determine the intent of Congress in punishing multiple aspects of the same criminal act." See also *People v. Hobbs* (1981), 86 Ill. 2d 242, 246, 427 N.E.2d 558, and *People v. Haron* (1981), 85 Ill. 2d 261, 270-79, 422 N.E.2d 627.

The prerequisites of the consecutive sentence statute were totally absent in the case at bar. The trial court was therefore powerless to impose consecutive sentences on Paino. I agree with the majority that when a statute is unambiguously worded it should be enforced according to the plain meaning of its language. Indeed, the consecutive sentence statute is unambiguously worded. It clearly states, "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, *unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(a).) The foregoing language, in my judgment, does not support the conclusion that the plain language of section 1005—8—4(a) authorizes the imposition of a consecutive sentence in cases not involving Class X or Class 1 felonies and not involving severe bodily injury if there has been a substantial change in the nature of the criminal objective. The statute simply does not so state. This legislative omission, or possible inadvertence, should not be rectified by unrestricted judicial interpretation.

Statutory amendments are constitutionally delegated to the legislature, not the judiciary.

Defendant's attorney stated to the trial court that he objected to the consecutiveness of the armed robbery and the deviate sexual assault sentences and asked the trial court its basis for imposing consecutive sentences. The court responded:

> "Consecutiveness is based upon the fact that the Court finds that there was a changing of the criminal objective as well as the fact that it is necessary in the Court's mind to protect the public from defendants like Mr. Paino.
>
> A person cannot even drive down the street and get out of a taxicab without having somebody jump out of a car and take her into his own car and sexually assault her in as many ways as he possibly could."

Again, it must be noted that it was the codefendant Mulkey who, while armed, abducted the complainant from a public street. It was Mulkey who first raped the victim. It was Mulkey who was the principal armed robbery offender. It was Mulkey who pleaded guilty to aggravated kidnaping, rape, armed robbery and deviate sexual assault.

The trial court endeavored to justify Paino's consecutive sentences by stating that there was a change in the criminal objective. As previously pointed out, the consecutive sentence statute *does not* state that a consecutive sentence may be imposed where there has been a substantial change in the criminal objective. The statute states that the court *shall not* impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was *no substantial change* in the nature of the criminal objective. Assuming, arguendo, that the judiciary has unrestricted authority to expand the statute to provide that consecutive sentences may also be imposed where there *has* been a substantial change in the nature of the criminal objective, even then, a mere "changing of the criminal objective," as the trial court stated, is an insufficient basis for imposing consecutive sentences. The statute requires that there be a *substantial change* in the criminal objective. Because the trial court found that there was simply "*a changing* of the criminal objective" and because the trial court did not find that there was a *substantial change* in the criminal objective, the imposition of the consecutive sentences was unauthorized and the sentences are illegal.

The majority finds that "clearly there was a substantial change in the nature of the criminal objective regarding the three distinct offenses." But the record clearly shows that the trial court did not make such a finding.

There is no factual basis in the trial record on which the trial court or this court could find that there was a change, substantial or otherwise, in Paino's and Mulkey's criminal objective. The evidence is convincingly conclusive that the offenders' initial criminal objective was to abduct, rob and commit sexual offenses on the complainant, which they did. The only evidence in the trial record from which Paino's and Mulkey's criminal objective can be determined is the evidence of what the two culprits did to the complainant after they abducted her, namely, commit sex and robbery offenses upon her. Rape, armed robbery and deviate sexual assault certainly are separate and distinct acts. But separate and distinct acts or courses of conduct are not the statutory prerequisites for imposing consecutive sentences. There must be a substantial change in the nature of the criminal objective. There was no evidence of a change in the nature of the criminal objective in this case.

The sequence of the commission of the offenses, the extent of the offenders' participation in the offenses and the offenses for which the trial court imposed the consecutive sentences, clearly contradict the trial court's finding that there was a change in the criminal objective. The court sentenced Paino to 30 years for rape and 25 years for armed robbery and deviate sexual assault, to be served concurrent with each other but consecutive to the sentence for rape.

Mulkey was the first to rape the complainant. Thereafter, Paino raped her. Subsequently, Mulkey robbed the complainant while Paino drove to Chicago's south side. Thereafter, in Mulkey's absence, Paino committed deviate sexual assault upon the complainant. The trial court combined Paino's armed robbery offense with his deviate sexual assault offense and made the 25-year imprisonment sentences for these two offenses consecutive to the 30-year rape offense sentence. Thus, Mulkey's robbery of the complainant and Paino's deviate sexual assault upon the complainant were not treated by the court, in sentencing, as a substantial change in their criminal objective.

In *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 439 N.E.2d 543, the defendant was sentenced to a prison term of three years for possession of burglary tools, three years for attempted burglary, seven years for burglary, five years for aggravated battery and 14 years for robbery. The five-year aggravated battery sentence was made consecutive to the 14-year robbery sentence, and all sentences were to be served consecutive to prison terms the defendant had been serving in Michigan before he escaped, and consecutive to any sentence the defendant might receive for his Michigan prison escape. The facts upon which the convictions were predicated were as follows. A police

officer approached the defendant in an alley standing behind the opened screen door of the burglarized premises. The defendant ignored the officer's command to halt and fled. Shortly thereafter, the defendant was approached on a school ground by another officer. The original officer arrived on the scene and both officers attempted to apprehend the defendant. The defendant sprayed the original officer's face with a toxic chemical and wretched the officer's gun, with which he repeatedly shot at the officer. The defendant again eluded apprehension. He was later captured by other officers in the area. The attempted burglary and burglary guilty findings were based on the defendant's attempted entry into two buildings to commit theft. The aggravated battery and robbery offenses arose out of the defendant's subsequent criminal objective of fighting and shooting at the officer and robbing him of his weapon to escape. In spite of what might have been considered a substantial change in the nature of the criminal objective, this court found that there was no basis for the trial court's imposition of consecutive sentences and modified the consecutive sentences to concurrent sentences. In so doing, this court held:

> "Finally we consider the propriety of the trial court's order that defendant's sentences for aggravated battery be served consecutively with his sentence for robbery. *** In applying [the consecutive sentence statute] the courts have looked to whether the crimes at issue were independently motivated. [Citation.] That same test was used *** at a time when independent motivation was held necessary to permit convictions for separate crimes occurring during one course of conduct." 108 Ill. App. 3d 665, 671.

The majority factually distinguishes *Fieberg* from the instant case and further states that Fieberg's aggravated battery of macing the police officer and the robbery of the officer's gun were motivated by the defendant's single criminal objective of evading capture following his commission of the other offenses. If the aggravated battery and robbery of an officer, which occurred subsequent to the defendant's burglary offense against a different victim, are not substantial changes in the defendant's criminal objective of burglary, *a fortiori*, contiguous sex and robbery offenses against the same victim do not constitute a substantial change in the defendant's criminal objective.

The cases relied on by the majority, *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 454 N.E.2d 1055, *People v. Rose* (1979), 75 Ill. App. 3d 45, 393 N.E.2d 698, and *People v. Brown* (1975), 31 Ill. App. 3d 547, 334 N.E.2d 323, are inapposite to the instant case.

In *Perruquet*, the court pointed out the evidence which estab-

lished the substantial change in the criminal objective. The court stated:

> "[I]n the case at bar, the evidence showed that the defendant, after completing the first rape against the victim, had her dress and get into the car after which he proceeded to go through her purse and take her money. \*\*\*. Further *evidence that the defendant's objective had changed after the first assault was provided by the defendant's* announced *intent to let the victim out of the car and take the car back to the mall. This statement by the defendant indicated that the first incident was completed and that he did not intend at that time to commit an additional rape of the victim. (Cf. People v. Finch* (1980), 86 Ill. App. 3d 493, 408 N.E.2d 87 (defendant's statement that he 'didn't have any intention of killing those two boys' when he went back to the service station to commit robbery supported consecutive sentences for armed robbery and murder); *People v. Lott* (1978), 57 Ill. App. 3d 706, 373 N.E.2d 466 (consecutive sentences were proper where defendant admitted he did not form the intent to kill the driver of the vehicle involved until after he killed the passenger).) *From this evidence the court in the instant case was justified in finding that the second rape in Jackson County was motivated by a separate criminal objective formed sometime after the defendant had completed the first rape of the victim* [in Williamson County]." (Emphasis added.) *People v. Perruquet* (1983), 118 Ill. App. 3d 293, 296.

In *People v. Rose* (1979), 75 Ill. App. 3d 45, 393 N.E.2d 698, also relied on by the majority, the defendant accosted the victim in a public street, forced her into a garage and thereafter into a vacant building where he forced her to disrobe and raped her. Afterwards, the defendant ordered the victim to dress and when she did, the defendant forcibly escorted her from the building. As the defendant forced her towards another building, the complainant broke away and ran. When she slipped and fell, the defendant caught her and they fought each other and fell to the ground. As they got up, the defendant took her purse, which contained $60. The victim ran and escaped to her home where she informed someone there of what the defendant had done to her. The court pointed out:

> "The evidence shows that the rape and robbery were two separate and distinct courses of conduct, and that rape was defendant's objective at the time he accosted complainant and, after the rape had been accomplished, that robbery became defendant's new objective when he caught complainant following her

unsuccessful escape attempt. Consecutive sentences were properly imposed [for the rape and robbery offenses]." 75 Ill. App. 3d 45, 55.

In *People v. Brown* (1975), 31 Ill. App. 3d 547, 334 N.E.2d 323, also relied on by the majority, the defendant verbally expressed his singular criminal objective when he accosted the victim on the street with a butcher knife, called her a vulgar name and told her, in the vilest language imaginable, that he was going to have sexual intercourse with her. The defendant forced the victim into a car, repeatedly hit her about the face and after driving some distance, stopped the car and raped her. Subsequently, he robbed her. Consecutive sentences were imposed for the rape and armed robbery offenses. In *Brown*, the evidence affirmatively established that there was a substantial change from defendant's orally expressed criminal objective to rape the victim to his subsequent objective to rob her. (31 Ill. App. 3d 547, 548.) *Perruquet, Rose* and *Brown* are not applicable to the instant case.

It is provided in the consecutive sentencing statute, section 5—8—4(b) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b)) that:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

The trial court did not rely on "the history and character of the defendant," Paino, when it imposed the consecutive sentences. The majority accurately points out that at the sentencing hearing, the State noted that Paino had felony convictions. However, the State conspicuously failed to point out to the trial court that those convictions were for two auto thefts and one property theft and that the sentences were imposed on guilty pleas to the auto thefts, pending the instant trial. Apparently, the State was aware that these Class 3 felony transgressions by the defendant were an inadequate basis for imposing consecutive sentences. It is my judgment that this defendant's criminal history was not a valid basis for imposing consecutive sentences.

The trial court failed to set forth in the record the basis for its opinion that consecutive sentences were required to protect the public from further criminal conduct by the defendant, as the foregoing statute requires. When the defense attorney objected to the consecutive sentences and inquired of the court its basis for imposing consecutive

sentences, the court stated that "Consecutiveness is based upon the fact \*\*\* that it is necessary in the court's mind to protect the public from defendants like Mr. Paino." The trial court's mere reiteration of the shibboleth of section 5—8—4(b) was inadequate and was not what the legislature intended. Had such been the legislative intent, the legislature would have said so by simply providing in the statute that the court may impose a consecutive sentence when the court *finds* that such a term is required to protect the public from further criminal conduct by the defendant. Instead, the legislature provided in the statute that the court must set forth in the record the basis for its opinion that a consecutive sentence is necessary to protect the public from further criminal conduct by the defendant. Although the supreme court stated in *People v. Pittman* (1982), 93 Ill. 2d 169, 177-78, 442 N.E.2d 836, that it would be better practice for the sentencing judge to state his opinion in the language of the statute, failure to do so does not necessarily require reversal. The court further held that the record must show the basis for the trial judge's opinion that a consecutive sentence is necessary for the protection of the public from further criminal conduct by the defendant.

In *People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473, the supreme court expressly reaffirmed its holding in *Pittman*. In *Hicks*, the nine-year-old victim, alone one afternoon in her family's apartment practicing her violin, answered a knock at the door. The defendant was at the door, and upon learning from the victim that she was alone, the defendant entered the apartment. The defendant viciously sexually and physically assaulted the child. He unsuccessfully attempted to force his penis into her vagina, forced his penis into her mouth, repeatedly cut her about the throat, beat her about the face, thrust a blunt object into her mouth, throat and pubic area and burned her, with boiling water, so severely about her chest, abdomen and right arm that her right breast bud was destroyed, which required substantial debridement and skin grafting and resulted in considerable permanent discoloration, scarring and disfigurement. The trial court sentenced the defendant to 20 years' imprisonment for rape, a consecutive 20-year term for deviate sexual assault and a concurrent 20-year term for heinous battery. The defendant contended before the supreme court that the trial court erred in imposing consecutive sentences because the trial court did not specifically find and the record did not establish that consecutive sentences were necessary to protect the public, as required by the consecutive sentence statute. The supreme court pointed out that the defendant failed to properly present this contention to the trial court, that the defendant

did not request a specific finding of the trial court and that the defendant did not complain that the trial court did not articulate its basis for the required statutory finding. The supreme court held that the statutory requirement that the trial court shall set forth in the record the basis for the court's determination that consecutive sentences are required to protect the public from further criminal conduct by the defendant is permissive rather than mandatory and was waived by the defendant's failure to properly present the matters to the trial court. 101 Ill. 2d 366, 374.

The supreme court also pointed out that it felt compelled to comment upon the trial court's lengthy review and explanation of the factors which it determined mandated imposition of the consecutive sentences. Those factors were (1) the evidence which established the aggravating nature of the crimes, (2) the defendant's psychological evaluation which indicated serious psychological problems, referred to in previous bizarre, sexually related behavior, (3) the defendant's noted and marked potential for further criminal behavior, absent long-term confinement and intensive treatment, (4) the defendant's need for long-term psychotherapy, and (5) the threat the defendant posed to society. Thus, the supreme court held, the trial court more than adequately complied with the statute's requirement that the court set forth in the record the basis for its opinion that consecutive sentences were required to protect the public from further criminal conduct of the defendant, even though the trial court did not recite the language of the statute in reaching its determination. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473.) The statute's mandate that the trial court state the basis for imposing consecutive sentences is to eliminate appellate conjecture and speculation on the basis for the trial court's sentence.

The trial court mystically employed the "magic words," but failed to review the factors or detail the evidence on which it based its conclusion that imposition of consecutive sentences was necessary to protect the public from further criminal conduct by the defendant. See *People v. Thomas* (1981), 98 Ill. App. 3d 852, 859, 424 N.E.2d 985, and *People v. Mathes* (1981), 101 Ill. App. 3d 205, 213, 427 N.E.2d 1269, where the court stated that section 5—8—4(b) requires that the reasons given by the trial judge support the conclusion that a consecutive sentence was required in order to protect the public from any further criminal conduct by the defendant, and *People v. Miller* (1981), 101 Ill. App. 3d 1029, 1041-42, 428 N.E.2d 1038.

In *People v. Griffin* (1982), 113 Ill. App. 3d 184, 446 N.E.2d 1175, the defendant was charged in four indictments with four thefts, alleg-

edly committed on different days, of four different articles from four different victims. The defendant was convicted of all four theft offenses, and the court imposed four consecutive five-year imprisonment terms. In modifying the consecutive sentences to concurrent sentences, the court stated:

"As indicated in *People v. Meints* (1976), 41 Ill. App. 3d 215, 221, 355 N.E.2d 125, 130, Standard 3.4 of the American Bar Association Project on Minimum Standards for Criminal Justice stated that consecutive sentences are rarely appropriate. In *People v. Zadel* (1979), 69 Ill. App. 3d 681, 387 N.E.2d 1092, *the court reiterated that consecutive sentences should be imposed sparingly. In appropriate circumstances, Illinois appellate courts have reduced a defendant's sentence from consecutive terms to concurrent terms.* In *People v. Perry* (1976), 38 Ill. App. 3d 81, 347 N.E.2d 340, defendant was convicted of unlawful use of weapons and unlawful possession of a firearm for failing to possess a firearm owner's identification card. The court considered the nature and circumstances of the offenses *** and, in concluding that defendant's sentences should run concurrently, rather than consecutively, stated: '[W]e fail to see how the imposition of consecutive sentences would protect the public from further criminal conduct by the defendant.' [Citation.] In *People v. Pace* (1975), 34 Ill. App. 3d 440, 339 N.E.2d 785, defendant was convicted of attempt murder and aggravated battery. The court stated that although it considered the crimes to be brutal, consecutive sentences were not required to protect the public from further criminal conduct by the defendant. Similarly, in *People v. Reno* (1974), 17 Ill. App. 3d 348, 308 N.E.2d 3, the defendant was sentenced to consecutive terms for rape and aggravated battery. The court concluded that the record did not support the imposition of consecutive terms as being necessary for the protection of the public and reduced defendant's sentences to concurrent, rather than consecutive, terms.

*** [W]e cannot say that the basis for the imposition of consecutive sentences has been adequately set forth in the record so as to indicate that such a sentence is necessary to protect the public from further criminal conduct by defendant. ***
* * *

We conclude that there are insufficient factors in the record, as required by the statute, to show that consecutive terms are necessary to protect the public from future criminal conduct by

defendant and that consecutive terms for the four convictions was an abuse of discretion. Therefore, defendant's sentences are modified and reduced to concurrent terms of imprisonment \*\*\*." (Emphasis added.) 113 Ill. App. 3d 184, 193-94.

In *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930, the trial court ordered the defendant's concurrent sentences for home invasion, armed robbery and armed violence to be served consecutive to another sentence the defendant was then serving. The defendant contended that the trial court erred in so doing because it did not set forth in the record the basis for its imposition of the consecutive sentence, as required by section 5—8—4(b). The appellate court agreed, vacated the consecutive sentence and held:

> "[W]e find that the trial judge in the instant case failed to adequately specify his reasons for the imposition of a consecutive sentence.
>
> Although the record in the present case indicates that the trial judge considered factors in aggravation and mitigation and examined the presentence report which revealed that the defendant was previously convicted of a series of offenses, including the two counts of burglary for which he was serving concurrent sentences at the time of sentencing in this case, one should not have to infer that the trial judge believed consecutive sentences were required to protect the public from the defendant's further criminal conduct. *The language of the statute is explicit: the basis for the trial court's imposition of consecutive sentences shall be set forth. An indirect acknowledgement of the statute's purposes is insufficient.*
>
> *One of the primary purposes of the provisions in the new sentencing act requiring a trial judge to set forth his reasons for imposing a particular sentence 'is to enable reviewing courts to determine just what went into the sentencing decision and whether it is consistent with the statutory objectives.'* [Citation.] The record in the instant case does not satisfy this purpose, and upon remand for resentencing the trial court must indicate on the record its reasons for imposing consecutive sentences if such sentences are ordered." (Emphasis added.) 83 Ill. App. 3d 982, 988.

The defense attorney in the instant case not only objected to the consecutive sentences, he additionally asked the court its basis for imposing consecutive sentences. The trial court responded that it was "to protect the public from defendants like Mr. Paino." For the majority to hold that the trial court's failure to specifically cite its basis

for the need to protect the public "cannot be a ground of error on appeal as defendant never sought amplification of this finding at the sentencing hearing" is, in my judgment, an unwarranted imposition on the defendant.

In *People v. Gray* (1984), 121 Ill. App. 3d 867, 460 N.E.2d 354, the defendant was sentenced to concurrent sentences of five years' imprisonment for involuntary manslaughter and three years for obstructing justice to be served consecutive to a nine-year extended term imprisonment sentence for concealing a homicidal death which arose out of his abuse of his stepchild. On review, this court eliminated the extended-term sentence for concealing homicidal death and further modified the sentences for all offenses to concurrent sentences. In so doing, the language of this court in *Gray* is most applicable to the case at bar:

> "Able counsel for defendant urges that the trial court erred when it imposed a consecutive sentence for the offense of concealment of homicidal death and also increased that sentence by imposing an extended term thereon. We agree with this contention.
>
> In our opinion, this type of sentence constitutes an improper augmentation of the sentence. Concealment of a homicidal death is a Class 3 felony. The penalty for this offense is imprisonment with a minimum of two years and a maximum of five years. However, this sentence is doubly augmented by the extended term and also by being made consecutive to the other sentences. This result is completely unfair and excessive.
>
> * * *
>
> *This court has not hesitated to modify sentences from consecutive to concurrent where the circumstances so require* and when we find that protection of the public is not served by the consecutive sentence. (See *People v. Griffin* (1982), 113 Ill. App. 3d 184, 193-94, 446 N.E.2d 1175.) In addition, *it has been held that consecutive sentences should be sparingly imposed. People v. Foster* (1975), 32 Ill. App. 3d 1009, 1013, 337 N.E.2d 90.
>
> We are constrained to state that the crime, or series of crimes, here committed against a defenseless child are an affront to civilized behavior and a sad commentary upon human nature. *However, repulsive and tragic as the situation here may be, we are obliged to follow the dictates of the statute* and to impose consecutive sentences only when we are convinced that consecutive terms of punishment are 'required to protect

the public from further criminal conduct by the defendant \*\*\*.'
\*\*\*

\*\*\* [T]he trial court properly expressed his anger and disgust at the manner with which the child was treated. \*\*\*. [But] it is too late to protect the innocent child from the miserable consequences of cruelty, but *it is our duty to consider not our emotional outrage but compliance with the statute pertaining to a consecutive sentence.* \*\*\*

\*\*\* [I]n our recent decision in *Griffin* we cited a number of pertinent authorities to the effect that *a consecutive sentence should be 'imposed sparingly' and is 'rarely appropriate.'* \*\*\* there must be a sufficient showing that the conduct of the defendant was such that a consecutive term was necessary for protection of the public. We conclude that the sentences imposed upon defendant should be made concurrent rather than consecutive." (Emphasis added.) *People v. Gray* (1984), 121 Ill. App. 3d 867, 871-73.

In the case before us, Paino's aggregate 55-year consecutive sentence is illegal, arbitrary, disproportionate and unconstitutionally disparate. It violates his constitutional right to equal protection of the law, punishes him for exercising his constitutional right to a trial and by a jury, and constitutes an abuse of the trial court's sentencing discretion.

The majority repeatedly states that the dissent *sua sponte* raises, contends, and concludes various issues. The defendant argues in his briefs to this court, however, that the trial judge improperly imposed consecutive sentences for offenses committed as part of a single course of conduct, that there was no substantial change in the criminal objective and that there was no evidence that he inflicted severe bodily harm on the victim. The defendant thoroughly argued these points throughout his briefs.

For the reasons I have stated, Paino's sentences should be vacated and the cause remanded to the trial court to impose appropriate sentences, consistent with the views expressed herein. In the alternative, this court should vacate the sentences imposed by the trial court and enter valid sentences pursuant to its authority under Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)).